ASH v. A. B. FRANK CO.†

(Court of Civil Appeals of Texas. San Antonio. Dec. 6, 1911. Rehearing Denied Jan. 3, 1912.)

1. APPEAL AND ERROR (§ 192*)—OBJECTIONS IN TRIAL COURT—ASSIGNMENTS OF ERROR—PLEADINGS.

An assignment of error attempting to attack the pleadings cannot be sustained where no basis was made therefor in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1221–1225; Dec. Dig. § 192;* Pleading, Cent. Dig. §§ 1348–1354.]

2. APPEAL AND ERROR (§ 216*) — REVIEW — OMISSION TO CHARGE—REQUEST.

Appellant cannot object to an omission of the court to charge, in the absence of presentation of a written special charge on the particular point or points.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. § 627.]

3. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING ISSUES—ACTION BY PRINCIPAL FOR ACCOUNTING.

Where plaintiff placed insurance policies in defendant's hands for collection for the benefit of plaintiff's creditors, an instruction, in an action to recover a surplus after settling with creditors, that if plaintiff placed the policies in the hands of defendant for collection, and payment of the proceeds to plaintiff's creditors, plaintiff could not recover any part retained by defendant, was erroneous, as ignoring an issue whether plaintiff was bound to pay the fees of an attorney employed by defendant to collect the policies.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

4. PRINCIPAL AND AGENT (§ 69*) — AGENT FOR COLLECTION—PAYMENT TO CREDITORS—SURPLUS.

Where plaintiff assigned insurance policies to defendant for collection and payment of the proceeds to plaintiff's creditors, and defendant settled with the creditors on the basis of 70 cents on the dollar, any surplus belonged to plaintiff, and not to defendant.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 69.*]

5. TRIAL (§ 252*)—INSTRUCTIONS—REQUEST TO CHARGE—CONFORMITY TO ISSUES.

Where, in an action to recover a surplus collected on insurance policies assigned by plaintiff to defendant to be collected by defendant through an attorney, and applied to the payment of plaintiff's debts, all the evidence showed that at the time of the assignment there was some arrangement as to the employment of an attorney, plaintiff claiming that defendant was to furnish the lawyer free of charge, while defendant claimed that a certain attorney was agreed on, who was to be employed for a specified fee, a requested charge submitting the case on the theory that nothing was said about the employment of attorneys, except that defendant was authorized to act in the matter, was erroneous as submitting an imaginary issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

6. LIMITATION OF ACTIONS (§§ 100, 199*)—AGENCY—ACTION FOR ACCOUNTING.

Plaintiff assigned insurance policies to defendant in July, 1902, for collection and payment of the proceeds to plaintiff's creditors. As soon as plaintiff learned of an alleged misappropriation of a part of the proceeds he wrote defendant for a statement, which was sent in March, but not received until May, 1904. On April 23, 1906, plaintiff sued for an accounting. *Held* that, since limitations do not run against a principal and in favor of an agent, who has misappropriated the funds of the principal, until the misappropriation has been discovered, if reasonable diligence has been used, the action was not barred as a matter of law, since whether reasonable diligence had been used was for the jury.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 487, 724; Dec. Dig. §§ 100, 199.*]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by William H. Ash against the A. B. Frank Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Leo Tarleton and G. O. Brown, for appellant. Terrell & Terrell, for appellee.

FLY, J. Appellant instituted this suit to recover of appellee, a private corporation, the sum of $3,648, alleging that in the month of July, 1902, he was a merchant in Barksdale, Edwards county, Tex., and owned a large stock of goods and merchandise in his store buildings; that he obtained insurance on the property in the sum of $10,000, and that on July 18, 1902, while the policies were in effect, the property was destroyed by fire, and the insurance companies thereby were liable for the sum of insurance thereon; that being indebted to appellee in the sum of $1,389.69, on July 31, 1902, appellant transferred the policies of insurance to appellee as his agent and bailee for collection; that appellee was to retain the indebtedness of appellant out of the proceeds, and appellee expressly agreed that appellant should not pay anything for the collection of the insurance, but that it would have the collection done by its attorney, who was paid an annual salary, without cost to appellant. It was further alleged that suits were instituted in the name of appellee, and it collected the money due on the policies, amounting to $10,914, and misapplied and converted to its own use $3,648. Appellee showed, by its pleading, how the money collected on the policies was distributed, two-thirds of the amount being prorated among creditors of appellant, and the other one-third being paid to the attorney who prosecuted the policies to judgment in the federal court at San Antonio and in the Circuit Court of Appeals of the United States at New Orleans; that appellant knew of the employment of the attorney and assented thereto. It was further answered that the policies were assigned to it to collect and to pay the net proceeds to the creditors of appellant, whose claims exceeded the full amount of the policies, and to employ attorneys to collect the amounts evidenced by the policies. The cause

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error dismissed February 7, 1912.

was submitted by the court to a jury and a verdict was rendered in favor of appellee, and upon it the judgment was rendered from which this appeal has been perfected.

The evidence shows that appellant's goods and storehouses were destroyed by fire, that he had insurance policies on the same in the sum of $10,000, and that at the time he was indebted to creditors for more than the amount of the policies, among the number being appellee, to whom he was indebted in the sum of $1,389.69. A few days after the fire appellant made an assignment in writing of the policies to appellee, and it was shown by the evidence of appellee that appellee was empowered to collect the money and appropriate the net proceeds to the ratable payment of the indebtedness of appellant to his creditors, and that it was not agreed that appellee should pay the attorney's fee for collection. Appellee claimed that appellant knew of the employment of the attorney and of the fee agreed to be paid him, and consented thereto. The amount of the insurance money, after deducting the attorney's fee, was 70 per cent. of the claims, and it was distributed among the creditors on that basis, appellee among the rest. Appellant denied that he knew the attorney was employed by appellee or that the fee was agreed upon.

The first assignment of error fails to assign error, and consists merely of a statement of what was the proper issue, without showing or attempting to show that it was not properly presented.

[1] The second assignment of error endeavors to attack the pleadings without making a basis for it in the trial court, and, while not clear, also seems to be an attempt to attack the charge on the ground that reasonableness of the attorney's fee was not an issue in the case. The fourth assignment also assails the charge on the same ground. The three assignments are not followed by a statement covering the matter of which a review is desired, because there is no mention of what was contained in the charge, although that was the object of the attack. The assignments assail the charge given by the court, and not those given at the request of appellee, and are answered by the statement that the charge of the court does not mention the attorney's fee.

There are in the brief two "second" assignments of error, the last one of that name being very long and complicated, but we conclude that it complains of an omission in the charge and not of positive error. [2] Under such circumstances, appellant should have supplied the omission with a requested charge. This rule has been established by a long line of decisions, beginning with Harlan v. Baker, Dallam, Dig. 578, in which case it was said: "It is the duty of counsel, when the law of a case, in their opinion, is not fully defined to the jury, to require of the court, in writing, a special charge upon the point or points." In the case of Loan Association v. Elliott (Tex. Civ. App.) 33 S. W. 545, cited by appellant, there was positive error and not an omission. As the case will be reversed, no basis for an assignment on the ground of a failure to fully present will probably arise again.

[3] Appellant sued for the amount of the insurance which was paid by appellee to an attorney, and he testified that he assigned the policies to appellee for collection, that appellee agreed that his salaried attorney would collect the money without charge to appellant, that it was agreed when the money was collected enough of it to pay the debt due appellee should be retained by it, and the balance should be delivered to appellant, that the money had been collected by appellee and appellant had not received any of it. On the other hand, the testimony of W. H. Weiss, who was connected with the corporation of A. B. Frank Company, was that the policies were transferred to his corporation to be collected and the net proceeds to be applied to the payment of the debts of appellant, that an attorney was to be paid out of the proceeds, and that appellant knew who was employed, and the fee that appellee had agreed to pay him, and had acquiesced in it. That evidence raised the only issue in the case, except that of limitation. The court presented the two issues, that as to the terms of the contract and that as to limitation, and then, in response to a request of appellee, charged the jury: "You are instructed in this case that if the plaintiff authorized the defendant to collect the money on said insurance policies for the benefit of the creditors, you will find for the defendant." In other words, the jury was told that if the policies were placed in the hands of appellee to be collected and the proceeds applied to the payment of appellant's creditors, that appellee could convert any part of it to its own use, or could apply any part of it, regardless of the reasonableness of the fee of attorneys. The charge in fact ignored the evidence as to what was agreed as to the payment of attorney's fees, and instructed the jury that by agreeing to permit appellee to pay the debts of creditors, appellant could not complain if any part of the proceeds, however trivial, was paid to creditors and the balance diverted to some other purpose. We do not recognize that to be the law of this or any other state, and appellee has not cited any authority in support of the proposition. We cannot conceive that such injustice would be permitted in a court, as that involved in the proposition that if a person assigns his property to an agent to be used in the liquidation of debts, and it is used for other purposes, that the principal has no right to complain if the agent converts property that should have gone to the creditors of the principal. If this had been a statutory assignment, and not in conflict with the bankruptcy act, the assignor might

be deprived of all interest in the assigned property if it did not, as in this case, amount to more than the debts of creditors because an acceptance under the assignment would relieve the assignor of the whole debt, if a certain per cent. of the debt was paid, and he would not be damaged by the creditors not obtaining the money and could not complain, but in this case he was not relieved of the balance remaining of the debts, and he was damaged by a diversion of the money from the purpose intended.

[4] Another phase of case is presented by the facts, and that is if appellant did place his policies in the hands of appellee to be collected and the proceeds to be prorated among creditors, and it appeared that appellee had settled with them on the basis of 70 cents on the dollar, it could not with any show of justice be claimed that appellee should be permitted to appropriate all of appellant's money over and above the 70 per cent. or divert it to some purpose not contemplated by appellant. If such settlement was made, appellant, and not appellee, should profit by it, for it was his money, unless he agreed, as testified by Weiss, that an attorney should have it.

The facts make this a case of principal and agent, the latter being appointed, under appellee's theory, to collect certain money and pay off certain debts, and, if the agent has acted in bad faith with his principal, the latter can recover from him such part of the funds as have not been appropriated under the terms and conditions of the agency. It is a well-settled and statutory rule that all profits made and advantage gained by the agent in the execution of the agency belong to the principal. Nor does it matter that the principal was not in fact injured by the intervention of the agent for his own benefit. If he acquires a profit legitimately in dealing with the subject-matter of his agency, or if he departs from his instructions and obtains a better result than by following them, the principal may claim such advantage. The agent is under obligation to act in the utmost good faith with his principal, and will not be permitted to make a profit out of the trust fund or to divert it from the purposes intended. Mechem on Agency, § 469.

Unless appellant agreed that one-third of his insurance money should be paid to an attorney for his services in collecting the money, or unless it was agreed that an attorney should be employed, but no fee fixed, and one-third of the amount collected is a reasonable fee, appellee had no right to divert the money from the purpose for which it was intended, and a charge is erroneous that instructs a jury that the principal cannot recover if he places a fund in the hands of an agent to pay off the claims of creditors, no matter what may be done with the money by the agent. That was the effect of the special charge under consideration and it was erroneous.

[5] Special charge No. 5 requested by appellee and given by the court was erroneous, because not supported by pleading or proof. All of the facts show that something was said about the employment of a lawyer, the theory of appellant being that appellee agreed to furnish a lawyer free of charge, and the version of appellant being that it was agreed that an attorney should be employed and that with the knowledge and consent of appellant he was employed for a certain fee. The special charge, however, submitted an imaginary issue in case "nothing was said about the employment of attorneys except that said A. B. Frank Company was authorized to act in the matter."

[6] If the uncontradicted evidence had shown that more than two years had elapsed from the time that appellant ascertained that there had been a misappropriation of the money by his agent until the suit was instituted, the claim would have been barred by limitation, and the errors complained of would be harmless, but the facts show that the first intimation had of the application of his money by his agent was what he gained through a letter from one of his creditors who told of a partial payment of his debt. As soon as he received that letter he wrote to appellee for a statement, which was sent in March, but was not received by appellant until May, 1904. On April 23, 1906, this suit was instituted by appellant. Limitation begins to run against a principal in favor of an agent when the latter has misappropriated the funds of the former, from the time that the misappropriation was discovered, if reasonable diligence has been used in making such discovery. Mitchell v. McLemore, 9 Tex. 151. The question as to the exercise of diligence is one for the jury.

For the errors indicated the judgment is reversed and the cause remanded.