DOLORES A. McCORMICK, demandante y apelante, *v.* MANUEL
    GONZÁLEZ MARTÍNEZ; JOSEFINA FABIÁN DE LOZANA y JOSE-
    FINA B. MACÍAS VDA. DE RIERA y EULOGIO DIMAS, JOSEFINA
    DOLORES, ALFONSO RAFAEL, ANTONIO, LUZ MARÍA y LUCÍA
    MERCEDES RIERA BENGOECHEA, demandados y apelados.

No. 6419.—*Sometido:* Febrero 23, 1934. *Resuelto:* Enero 27, 1936.

*Carlos J. Torres Laborde,* abogado de la apelante; *R. Cuevas Zequeira,* abogado del apelado Sr. González Martínez; *Hugh R. Francis,* abogado de la apelada Sra. Fabián de Lozana; y *Pellón & Ayuso,* abogados de los apelados Sra. Vda. de Riera y Sres. *Riera Bengoechea.*

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

La demanda inicial en este pleito fué presentada en la Corte de Distrito de San Juan el 18 de enero de 1933 y fué

enmendada tres meses después. Los demandados formularon excepciones previas a la demanda enmendada, alegando que la misma no aducía hechos suficientes para determinar una causa de acción y que las acciones ejercitadas habían prescrito. La corte de distrito sostuvo esas excepciones y después, a petición de la demandante, dictó sentencia declarando sin lugar la demanda. La perjudicada por ella interpuso esta apelación.

Para resolver las cuestiones planteadas, basadas en las alegaciones de la demanda, es necesario conocer los hechos consignados en la misma.

La demandante, Dolores A. McCormick, es la viuda y única heredera de Harry A. McCormick; los demandados son Manuel González Martínez, Josefina Fabián de Lozana como única heredera de su padre Rafael Fabián y Fabián y la viuda e hijos de José D. Riera.

La demanda expone separadamente dos causas de acción y tiene alegaciones comunes a ambas. En la primera se dice que allá por el mes de marzo de 1920 el demandado Manuel González se asoció con los señores Rafael Fabián y Fabián y José D. Riera para organizar una persona jurídica que, aportando el dinero necesario, adquiriera los bienes corporales e incorporales de la Compañía de los Ferrocarriles de Puerto Rico y de The American Railroad Company of Porto Rico, haciendo suyas las 12,000 acciones del capital social de la primera, las 3,000 acciones de la segunda y los 12,500 bonos *Debenture* al 4 por ciento de la última; y que procedieron inmediatamente a comprometer las suscripciones de varias personas naturales y jurídicas y a recibir el importe de ellas, figurando entre dichas personas Harry A. McCormick con $100,000 de suscripciones que hizo efectivas; suscripciones y entregas de dinero que también hicieron las personas que se relacionan en la demanda, cuyo dinero fué depositado en cuenta corriente a nombre de González, Fabián y Riera en el Banco Territorial y Agrícola de Puerto Rico. Como hechos particulares de la primera

causa de acción expone la demanda que los señores González, Fabián y Riera dispusieron de parte de ese dinero así depositado y, por cuenta y para beneficio de los asociados para la compra del ferrocarril, adquirieron en París 20,000,000 de francos franceses por los cuales pagaron $1,274,636.38 que retiraron de la expresada cuenta corriente; francos que vendieron después con una ganancia de $317,073.77, los cuales no fueron ingresados en el fondo común del negocio ni parte alguna de ellos, apropiándoselos los señores González, Fabián y Riera.

La segunda causa de acción se funda en que dichos tres señores, actuando en la forma dicha, celebraron el 10 de abril de 1920, un contrato con el Sr. George Servajean en su condición de representante de las dos compañías antes mencionadas, por el cual se obligó a vender y los primeros a comprar, por precio de $1,600,000, las acciones de dichas compañías y los bonos de The American Railroad Company of Porto Rico; que en la misma fecha, 10 de abril de 1920, los señores González, Fabián y Riera formalizaron por escrito con los demás asociados para la contratación antes dicha el compromiso de aportación de capitales, ascendiendo a $2,628,200 el total suscrito, estipulándose como condición esencial de tales aportaciones lo que aparece del segundo párrafo del documento suscrito por los señores González, Fabián y Riera y sus asociados para el negocio que se deja dicho, que dice así:

"Todos los suscritores decidirán después si habrán de continuar las compañías tal como ahora se encuentran, o si han de constituir otra nueva compañía, pero mientras tanto todos los suscritores son dueños de las acciones compradas de ambas compañías y también de los bonos de la American Railroad Company of Porto Rico, en la proporción de las cantidades que aportan para el negocio de acuerdo con el costo ya expresado, entendiéndose que ya sea al formar la nueva compañía o al vender el negocio, los beneficios que se hagan serán repartidos en la justa proporción de las aportaciones a este negocio."

También se alega que González, Fabián y Riera recibieron de Servajean 11,048 acciones del capital social de la Compañía de los Ferrocarriles de Puerto Rico, 3,000 acciones, o sea la totalidad, de las de The American Railroad Company of Porto Rico, y 11,193 bonos *Debenture* de dicha corporación, faltando por adquirir 32 de esos bonos y 952 acciones de la. Compañía de los Ferrocarriles de Puerto Rico, estando depositado el importe total de esos bonos y acciones en un banco de París; y que los señores González, Fabián y Riera manifestaron falsamente a sus asociados para el negocio de referencia haber convenido con el Sr. Servajean en pagarle la cantidad de $550,000 en concepto de comisión por la compra de las acciones y bonos referidos, siendo la verdad que no habían contraído tal obligación ni les había sido exigida esa comisión por Servajean, a quien no ha sido entregada cantidad alguna por dichos tres señores, quienes se apropiaron de los referidos $550,000 el 27 de mayo de 1920.

Basándose en las alegaciones que anteceden, la demandante solicita que los demandados sean condenados a pagarle $36,100 por la ganancia en la operación de compra de francos, a razón de 360 milésimas de dólar por los que aportó; y $62,700 por los $550,000 a que se refiere la segunda causa de acción, a razón de 627 milésimas de dólar, más intereses y costas.

Los hechos expuestos en la demanda enmendada pueden resumirse así: que con los fondos reunidos para la compra del ferrocarril los demandados compraron y revendieron francos y se apropiaron la ganancia que obtuvieron en esa operación; que los demandados dijeron falsamente a los suscritores del fondo común que había que pagar para la compra de dichas acciones y bonos cierta cantidad de dinero a tercera persona como comisión suya, siendo la verdad que no se hizo pago alguno y que los tres demandados se apropiaron el dinero que dijeron tenían que pagar.

Hemos leído la opinión emitida por la corte inferior y las conclusiones de derecho en la misma establecidas. La excep-

ción de falta de hechos fué sostenida porque, a juicio del tribunal sentenciador, los señores González, Fabián y Riera cumplieron al pie de la letra la obligación contraída comprando las acciones y los bonos y dando a cada suscritor del fondo el número de acciones que le correspondía. Cumplida esta obligación la demandante no tiene derecho a participación alguna en los beneficios derivados de la compra y venta de francos con los fondos reunidos para la adquisición del ferrocarril. También declara la corte inferior que la segunda causa de acción está prescrita, lo mismo si se aplica el artículo 1802 del Código Civil de Puerto Rico o cualquier otro precepto del código, por haber transcurrido más de doce años desde que ocurrieron los hechos que sirven de base a la acción ejercitada hasta que se inició el presente litigio. Siendo éstas las cuestiones resueltas por el tribunal *a quo,* a ellas nos atendremos en la discusión del presente caso.

Se alega que la demanda no aduce hechos determinantes de causa de acción alguna, porque no se dice en ella que los demandados hayan infringido derecho alguno de la demandante Dolores A. McCormick, o de su causante, Sr. Harry A. McCormick. Basan esta excepción los demandados en que lo convenido fué adquirir los bienes corporales e incorporales de las compañías ferrocarrileras por un precio determinado y que los suscritores quedaran dueños de las acciones así adquiridas en la proporción de las cantidades que cada uno de ellos aportara al negocio, todo lo cual se ha cumplido de acuerdo con lo estipulado, porque en la demanda no se alega que dejaran de comprarse las acciones o que dejara de entregarse a cada suscritor el número de acciones correspondientes a la cantidad que cada uno aportara. La única omisión que se alega es la de no haberles dado participación a los suscritores en el beneficio obtenido en la compra y venta de los francos. Arguyen los demandados que en ningún momento ninguno de ellos, al recibir el dinero en pago de las acciones que cada suscritor comprara y colocar dicho dinero en la cuenta corriente de los demandados, se obligó a dar a

los suscritores participación en la ganancia de un negocio privativo de ellos; de la misma manera que nunca hubieran podido ser obligados los suscritores a responder de cualquier pérdida que tal negocio hubiera podido reportar.

La demandante, basándose en la existencia de un mandato, sostiene que la relación de mandante y mandatario es una de estricta confianza entre las partes, que el mandatario no puede especular con la cosa objeto de su encargo para derivar de ella una ganancia, y que puede ser requerido por el principal o mandante para que dé cuenta de cualquier beneficio por él recibido en violación de sus deberes, aun cuando aparezca que el mandante no sufrió pérdida alguna por el fraude o de otro modo, o por cualquier ganancia secreta que hubiera recibido.

No hay duda alguna de que el contrato de mandato es uno de estricta confianza y que la relación que se crea en virtud de este contrato es una de carácter fiduciario. Así lo reconoce Manresa cuando dice que ''al analizar los sesenta y dos fragmentos del tít. 1º. libro 17 del Digesto, las veinticuatro leyes del tít. 35 del libro 4º. del Código y el título 26 del libro 3º. de la Instituta, se advierte claramente la profunda verdad con que los intérpretes y los glosadores, sintetizando su espíritu, definieron este contrato como genuina expresión de la amistad y de la confianza, y hasta el sentido etimológico, *manusdatio,* expresivo en su aceptación literal de la acción de darse la mano mandante y mandatario, parece confirmar la exactitud de aquella opinión, pudiendo por ello, con su habitual elegancia en el decir, definirlo: *Contractus consensualis quo negotio honestum alteri suscipienti gratis gerendum committitur.''* 11 Manresa, 369.

Pomeroy, en su tratado sobre ''Equity Jurisprudence'', tomo 2º., párrafo 959, dice que la equidad estima la relación de principal y agente de la misma manera y con la misma rigidez que la de un fideicomisario y beneficiario.

La relación establecida entre los Sres. González, Fabián y Riera y las personas que entregaron su dinero para la adquisición de los bienes de las compañías ferrocarrileras es en

realidad una relación de carácter fiduciario. De las alegaciones de la demanda, que tenemos que tomar como ciertas para los efectos de una excepción previa, resulta que los demandados, utilizando el dinero que se les había confiado para la negociación indicada, derivaron una ganancia que se reservaron para ellos, sin dar cuenta de la misma a los suscritores del fondo. Apunta Manresa que "el mandatario que recibe una cantidad para el mandante y en lugar de enviarla la retiene en su poder y la emplea en la satisfacción de necesidades propias, sin estar para ello debidamente autorizado, realiza un verdadero abuso de confianza, o como diría nuestra ley de Partida, un *enriquecimiento torticero*." 11 Manresa, 454. Del mismo modo puede decirse que cuando el mandatario recibe fondos para un propósito determinado y los usa para fines particulares, derivando beneficios de dicho uso, realiza un verdadero abuso de confianza que constituye un enriquecimiento torticero. Es verdad que el artículo 1615 del Código Civil, edición 1930, dice que el mandatario debe intereses de las cantidades que aplicó a uso propio desde el día en que lo hizo, y de las que queda debiendo después de fenecido el mandante, desde que se haya constituído en mora, pero esto no quiere decir que el mandante queda limitado a exigir exclusivamente los intereses de las cantidades aplicadas a uso propio. En nuestro sentir, cuando el mandatario dispone de los fondos en su poder para su uso particular, el mandante puede reclamar el interés si no ha habido beneficios, y si los hay, entonces puede elegir entre reclamar el interés o las ganancias percibidas. La persona que se ha enriquecido torticeramente no debe tener derecho a retener en su poder, contra la voluntad del mandante, los beneficios obtenidos. Sostener lo contrario equivaldría a concederle un premio por su actuación ilegal, que convertiría en un negocio lucrativo y provechoso el acto torticero de haber utilizado para su propio beneficio los fondos pertenecientes a su mandante. El mandatario, según nuestro código, no

puede traspasar los límites del mandato. Cuando se excede en sus atribuciones, llegando al extremo de utilizar para su uso particular los fondos que obtuvo en virtud de la confianza en él depositada, debe responder al mandante de las ganancias que dicho uso haya podido proporcionarle.

En *U. S.* v. *Carter,* 217 U. S. 286, 305, los hechos distan mucho de parecerse a los que aquí se alegan por la demandante para sostener su causa de acción, pero la Corte Suprema de los Estados Unidos en su opinión trata de la relación fiduciaria que se crea entre agente y principal y enuncia principios que bien pueden aplicarse al presente litigio. En dicho caso Oberlin M. Carter, un oficial ingeniero del ejército de los Estados Unidos, encargado de preparar los planos y especificaciones que habían de servir de base a ciertos contratos, bajo posturas conducidas por él, fué acusado de haber participado en las ganancias obtenidas por los contratistas Gaynor y Greene, y de haberse confabulado con ellos para defraudar a los Estados Unidos. Estos contratos fueron ejecutados, el dinero desembolsado y el trabajo inspeccionado y aceptado por dicho funcionario, o por el Departamento de Guerra bajo su consejo y recomendaciones. La corte sentenciadora, aunque sustancialmente dictó un fallo en favor de los Estados Unidos, sostuvo que la conducta de Carter no constiuyó necesariamente un abuso de la discreción en él investida, ni estuvo seriamente en conflicto con su alegación de que él cumplió con sus deberes para con el Gobierno. La Corte de Circuito de Apelaciones convino en que la evidencia analizada por la corte inferior, considerada independientemente de toda la cadena de circunstancias, justificaba sus conclusiones, pero sostuvo que consideradas todas las circunstancias del caso la evidencia tendía a probar, de parte de Carter, conocimiento de la excesiva ganancia obtenida por los contratistas, su participación en las mismas, y su complicidad en las transacciones fraudulentas. La Corte Suprema de los Estados Unidos, luego de referirse a las conclusiones

establecidas por la corte sentenciadora y la Corte de Circuito de Apelaciones, se expresó así:

"Una vez asumido que el demandado Carter recibió de Greene y Gaynor una proporción de las ganancias obtenidas en la ejecución de los contratos, queda establecido el derecho de los Estados Unidos, en equidad, a un decreto contra él por la participación así recibida. Establecido este derecho no importa si el demandante pudo poner de relieve cualquier abuso específico de discreción o si pudo demostrar que había sufrido una pérdida real mediante fraude o de otro modo. No es bastante para uno que ocupa con respecto a otro una relación confidencial, cuando se demuestra que ha recibido secretamente un beneficio de la parte contraria, decir: 'Usted no puede demostrar ningún fraude, o usted no puede demostrar que ha sostenido pérdida alguna en virtud de mi conducta.' Tal agente tiene el poder de ocultar su fraude y el daño hecho a su principal. Sería un precedente peligroso establecer como ley que a menos que se demuestre pérdida o fraude positivo, el agente puede retener cualquier beneficio secreto que haya podido derivar de su agencia. Los grandes intereses de la justicia pública no tolerarán, bajo ninguna circunstancia, que un funcionario público retenga ninguna ganancia o ventaja que pueda haber realizado, adquiriendo un interés en conflicto con su lealtad como agente. Si él toma cualquier regalo o beneficio en violación de su deber, o adquiere cualquier interés adverso a su principal, sin descubrirlo, su conducta constituye una traición del mandato y un quebrantamiento de la confianza y debe responder a su principal por todo lo que haya recibido."

Esta doctrina cubre a todas aquellas personas ligadas a otras por una relación fiduciaria que falten a la confianza en ellas depositada. El principio es el mismo y se establecería un precedente peligroso si se permitiera a un agente que dispone de los fondos de su principal enriquecerse torticeramente, reteniendo las ganancias que haya podido proporcionarle el uso indebido de dichos fondos.

Continuamos copiando de la opinión de la Corte Suprema en el caso referido:

"La doctrina ha quedado bien establecida y ha sido aplicada en muchas relaciones de agencia o fideicomiso (*trust*). La incapacidad para actuar resulta no del objeto sino del carácter fiduciario de la persona contra quien se aplica. Está fundada en la razón y la na-

turaleza de la relación es de importancia suprema. 'No importa,' dice Lord Thurlow en The New York Buildings Co. v. Alexander Mackenzie, 3 Paton, 378, 'el nombre particular o descripción, ya sea de carácter o cargo, situación o posición, en que se basa la incapacidad.' Así, en Aberdee Railroad Co. v. Blaikie Brothers, 1 Mac Queen's Appeal Cases, 461, 472, se aplicó a un contrato de un director negociando en favor de su compañía. Lord Chancellor Cranworth, con respecto a la regla general, dijo:

" 'Y es una regla de aplicación universal que a ninguna persona que tenga tales deberes que desempeñar debe permitírsele entrar en negociaciones en las cuales ella tiene o puede tener un interés personal en conflicto o que posiblemente pueda estar en conflicto con el interés de aquéllos a quienes está obligado a proteger.
" '

" 'Es verdad que las cuestiones se han basado generalmente en convenios para compras o arrendamientos de terrenos, y no como aquí en un contrato de carácter mercantil. Pero el principio no varía. La incapacidad para contratar depende no del objeto del convenio sino del carácter fiduciario de la parte contratante, y yo no tengo dudas de que no se aplica con menos fuerza al caso de una parte que actúa como representante de una mercantil o que hace negocios para el beneficio de otros, que a la de un agente o fideicomisario empleado en vender o arrendar terrenos.' "

No hay duda alguna de que un agente que utiliza para su uso particular los fondos de su principal actúa contra los intereses del último. Esos fondos corren el riesgo de reducirse o perderse, y aunque el agente viene obligado a devolverlos, su responsabilidad puede resultar ilusoria si carece de bienes para reponerlos. Y si restituye los fondos utilizados su conducta no es menos abusiva y torticera en su origen por el hecho de la reposición. La responsabilidad debe extenderse también a las ganancias.

Dice Pomeroy en su obra sobre "Equity Jurisprudence", tomo 2, pág. 1564, pár. 1052:

"La doctrina puede estatuirse en forma general que, cuando un fideicomisario o persona investida de un carácter fiduciario se aprovecha de la relación establecida, y por medio de ella adquiere el título o el uso de la propiedad en fideicomiso, o deriva una ganancia o ventaja para sí en virtud de la confianza depositada, surge enton-

ces un fideicomiso tácito sobre dicha propiedad, ganancias o producto en sus manos en favor del beneficiario original. Los siguientes son los casos de más importante aplicación de esta doctrina: cuando un fideicomisario, administrador, mandatario, abogado u otra persona fiduciaria, sin el conocimiento o consentimiento de su beneficiario, compra la propiedad en fideicomiso en una venta pública; o cuando, tomando ventaja del fideicomiso y de la confianza en él reposada, o de la superioridad conferídale en virtud de la relación, adquiere sin escrúpulos título a la propiedad en fideicomiso mediante compra o regalo directamente del beneficiario; o cuando usa la propiedad en fideicomiso para su propio beneficio, o en su propio negocio, y por medio de tal uso obtiene ganancias adicionales y ventajas,—en éstos y en todos los casos similares la equidad hace surgir un fideicomiso tácito sobre la propiedad comprada u obtenida, y sobre las ganancias y adquisiciones así hechas para el beneficio de la parte *beneficially entitled*. Esta forma de fideicomiso tácito abraza muchos casos particulares y el principio se extiende a todos los abusos de confianza mediante el cual una persona en quien esa confianza se deposita obtiene una ventaja.''

En *Shaler* v. *Trowbridge*, 28 N. J. Eq. 595, Scott ''Cases on Trust'', pág. 523, dice la Corte de Errores y Apelaciones de New Jersey:

''Si una persona que ocupa una relación fiduciaria adquiere bienes con fondos fiduciarios en su poder, y recibe el título a nombre propio, por interpretación se entenderá que actúa como fiduciaria de la persona con derecho a los fondos con que se hizo tal adquisición. Esta regla es aplicable a un socio que fraudulentamente adquiere para sí con los fondos de la sociedad, y es extensiva tanto a bienes muebles como a los inmuebles; en todo caso el título en equidad lo tiene la persona de quien procedía el dinero. (Citas.)

''En Taylor v. Plumer, 3 M. & S. 575, Lord Ellenborough dijo que si $B$ entrega dinero a $A$ para que le compre un caballo, y $A$ compra un coche con el dinero de $B$, éste tiene derecho al coche; que no importaba ante la lógica o ante el derecho en qué otra forma distinta a la original puede haber ocurrido el cambio, toda vez que el producto o la sustitución de la cosa original sigue la naturaleza de la cosa misma, mientras ésta pueda ser determinada, y tal derecho cesa tan sólo cuando desaparezcan los medios que hacen posible tal determinación. En Story's Eq. Juris., secs. 1258, 1259, se declara que ésta es la regla establecida.

"Ambas cosas son identificadas tan enteramente, aún en derecho, cuando la conversión puede ser claramente establecida, que en equidad nunca podría hacerse una distinción entre el dinero erróneamente apropiado y el resultado de su inversión en favor del defraudador.

"Tampoco importa que la inversión resulte provechosa, pues cualquiera que sea el provecho el mismo pertenecerá al fideicomisario. El uso ilegal de sus bienes y el retener indebidamente los beneficios equivale a un fraude implícito al fideicomisario, siendo un principio fundamental en lo que al fiduciario concierne, que éste no derive lucro alguno para sí, al emplear los fondos que posee en fideicomiso. (Citas.)

"Además, el bienestar público exige que todo aquél que corruptamente se sitúe en la posición de un fiduciario, no se beneficie de su propio fraude."

La decisión que acabamos de citar considera un fraude implícito la retención de los beneficios torticeramente obtenidos y dice que es un principio fundamental, en lo que al fiduciario concierne, que éste no derive lucro alguno para sí al emplear los fondos que posee en fideicomiso. Esta doctrina surge de la relación fiduciaria que en un caso como el presente es clara y manifiesta. Cualquiera que sea el nombre que se dé a la relación contraída por los Sres. González, Fabián y Riera con los suscritores del fondo, no puede negarse que la misma, tomando como ciertas las alegaciones de la demanda, tiene carácter fiduciario.

En el caso de *Ash* v. *A. B. Frank Co.*, 142 S. W. 42, la Corte de Apelaciones Civiles de Tejas se expresó así:

"Los hechos hacen de este caso uno entre principal y agente, habiendo sido éste nombrado, conforme a la teoría del apelante, para que cobrara cierto dinero y pagara ciertas deudas; y si el agente ha actuado de mala fe con su principal, éste puede recobrar de él aquella parte de los fondos de que no se dispuso conforme a los términos y las condiciones de la agencia. Es regla estatutaria bien establecida que toda ganancia obtenida o beneficio hecho por el agente en la ejecución de la agencia pertenece a su principal. Tampoco importa el que el principal no fuera perjudicado con la intervención del agente en su propio beneficio.

"Si él adquiere un beneficio legítimamente al actuar o al efectuar un negocio con la cosa objeto de su gestión (*with the subject*

*matter of the agency*), o si se desvía de sus instrucciones y obtiene un resultado más favorable que si las hubiera seguido, el principal puede reclamar ése su beneficio. El agente está obligado a actuar de la mejor buena fe para con su principal, y no se le permitirá que haga beneficio alguno que se derive o emane del fondo que tiene en fideicomiso (*trust fund*) o que lo distraiga para fines distintos a aquellos para los cuales se intentaban (*or to divert it from the purposes intended*). *Mechen on Agency*, pár. 469.''

Nuestro Código de Comercio, en su artículo 112, dice:

''No podrán los socios aplicar los fondos de la compañía ni usar la firma social para negocios por cuenta propia, y en el caso de hacerlo, perderán en beneficio de la compañía la parte de ganancias que en la operación u operaciones hechas de este modo les pueda corresponder, y podrá haber lugar a la rescisión del contrato social, en cuanto a ellos, sin perjuicio del reintegro de los fondos de que hubieren hecho uso y de indemnizar a los demás socios de todos los daños y perjuicios que se le hubieren seguido.''

En el presente caso los suscritores, de acuerdo con las alegaciones de la demanda, entregaron su dinero a los Sres. González, Fabián y Riera para un propósito común: la adquisición de los bienes corporales e incorporales de las compañías ferroviarias. Con ese único fin se entregó el dinero a los tres señores anteriormente mencionados. El principio aplicable es el mismo, de acuerdo con la razón natural y los principios generales de derecho. Lo esencial es que surja una relación fiduciaria, tanto en el orden civil como en el mercantil, como ocurre en el presente caso, en que según las alegaciones se entregó un dinero para cierto propósito y se dispuso del mismo para fines particulares por las personas encargadas de cumplir la voluntad de los suscritores. En estas razones nos basamos para sostener que los hechos alegados en la demanda establecen una causa de acción.

Alegan los demandados que las acciones ejercitadas están prescritas. La corte inferior nada dice sobre este particular en cuanto a la primera causa de acción, indudablemente porque no lo creyó necesario después de haber declarado que a su juicio no existía esa causa de acción. Los de-

mandados en extensos y laboriosos alegatos discuten los efectos del dolo causante y del dolo incidental en el origen de los contratos y en el cumplimiento de los mismos y dicen que el dolo imputado (beneficio en la compra de francos con ocultación del hecho en perjuicio de los suscritores y supuesta comisión al Sr. George Servajean), interpretando las alegaciones de la demanda con la mayor liberalidad, tiene sólo el carácter de dolo incidental que produce únicamente la obligación de indemnizar en daños y perjuicios, cuando la reclamación se establece de acuerdo con los términos de la ley que regula el ejercicio de acciones semejantes. Se arguye que, si hay dolo, la acción está prescrita de acuerdo con el artículo 1253 del Código Civil.

En el presente caso no se solicita la nulidad de contrato alguno ni se ejercita una acción subsidiaria de daños y perjuicios. Se pide simplemente la entrega de los beneficios obtenidos con un dinero que perteneció al causante de la demandante, y que los demandados utilizaron para sus fines particulares. No es aplicable, por lo tanto, el artículo 1253 del Código Civil, edición 1930, según el cual la acción de nulidad sólo durará cuatro años en los casos de error o dolo o falsedad de la causa, desde la consumación del contrato. Se hace hincapié, sin embargo, en el dolo incidental con el propósito de hacer aplicable este artículo.

A nuestro juicio aún en el supuesto de que la conducta de los demandados, de acuerdo con las alegaciones de la demanda, pudiera calificarse de dolosa, no sería aplicable el artículo 1253 del Código Civil. Hay cierta diferencia en los efectos del dolo que es origen de las obligaciones y el que tiende a eludir el cumplimiento de las mismas. El artículo 1055 del Código Civil dispone que la responsabilidad procedente del dolo es exigible en todas las obligaciones. El concepto del dolo de que se ocupa este artículo consiste, según Manresa, en el propósito consciente, intencionado, de eludir el cumplimiento normal de las obligaciones. Interpretando

el artículo 1102 del Código Civil español, equivalente al 1055 del nuestro, se expresa así el mencionado comentarista:

"Ese concepto del dolo es oportuno expresarlo, porque precisamente una de las dos cuestiones que suscita la interpretación de las pocas disposiciones contenidas en este artículo, cuyo fundamento de justicia es notorio, consiste en la determinación de lo que el legislador entiende por dolo, palabra que emplea y no explica en este lugar, a diferencia de lo que hace con motivo de las otras causas de incumplimiento. Tal silencio, existiendo, como existe, en el Código otro artículo, el 1269, también relativo a obligaciones, que define el dolo como causa de nulidad del consentimiento en los contratos, podría interpretarse, no obstante la diferencia de lugar, supuesto y asunto entre dicho artículo y el 1102, como una referencia implícita a la definición de aquél para suplir la omisión de éste. No lo creemos así; porque basta fijarse en la indicada definición del artículo 1269 para comprender que, hecha como está para una hipótesis distinta de ésta, se refiere a un aspecto y especie de dolo, al que concurre en el *origen* de las *obligaciones* y puede ser *causa de nulidad* (aunque también de indemnización), y no puede abarcar el total concepto de aquél, ni esta otra manifestación, con la cual aparece en la *ejecución* de obligaciones *ya existentes* y es *motivo de responsabilidades.*

"Por ello, y a pesar de la relación entre la definición del artículo 1269 y el concepto que hemos expresado relativo al dolo, en el supuesto y sentido del presente artículo, entendemos que dicho concepto, y no aquella definición, es el apropiado en este lugar, explicándose el silencio del Código por lo evidente de la noción a que se refiere. Y al sentar esta afirmación y distinguir en el dolo los dos conceptos indicados, encontramos sólido apoyo en la jurisprudencia del Tribunal Supremo, el cual ha declarado (sentencia de 22 de octubre de 1894) que 'El artículo 1102 se dirige más bien al dolo que tiende a eludir el cumplimiento de las obligaciones que al que es origen de las mismas, concepto que se confirma por la redacción de los artículos que le subsiguen y del que le antecede.' " IV Manresa, 68.

Como ya hemos dicho, en el presente caso no se pide la nulidad de nada ni se reclama compensación alguna por daños y perjuicios. La parte apelante se limita a demandar que se le entreguen los beneficios derivados del uso indebido de su propio dinero. La acción ejercitada debe regularse

por el artículo 1864 del Código Civil, según el cual prescriben a los quince años las acciones personales que no tengan señalado término especial de prescripción.

■■ En la segunda causa de acción se dice que los Sres. Fabián, González y Riera manifestaron falsamente a sus asociados que ellos habían convenido pagar la cantidad de $550,000 en concepto de comisión, siendo la verdad que no habían contraído tal obligación, ni había sido exigida esa comisión, que en ningún momento fué pagada al Sr. Servajean por los referidos señores, quienes se apropiaron la cantidad mencionada. También se alega que esta acción ha prescrito porque la actuación dolosa que se atribuye a los Sres. González, Fabián y Riera cae dentro del término señalado para la prescripción por el artículo 1253 del Código Civil. En esta segunda causa de acción, como en la primera, la demandante no solicita la nulidad de contrato alguno. Reclama la devolución de cierta cantidad que satisfizo su causante en la creencia de que constituía una deuda legítima. Según el artículo 1054 del Código Civil, quedan sujetos a la indemnización de daños y perjuicios causados los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren el tenor de aquéllas. Convenimos en que hay dolo en las manifestaciones atribuídas a los Sres. González, Fabián y Riera en esta segunda causa de acción, pero creemos que no puede aplicarse a esta actuación dolosa el plazo de cuatro años que la ley concede para el ejercicio de la acción de nulidad de contratos a contar desde su consumación. Y si se trata de un derecho de acción derivado de culpa o negligencia, comprendido en el artículo 1802 del Código Civil, tampoco podemos decir que la acción está prescrita, porque no surge de la demanda la fecha en que la demandante tuvo conocimiento de los hechos que sirven de base a esta segunda causa de acción, y de acuerdo con el artículo 1868 del Código Civil, (edición 1930), prescribe por el transcurso de un año la acción para exigir responsabilidad civil por las obligaciones

derivadas de la culpa o negligencia de que se trata en el artículo 1802 desde que lo supo el agraviado.

■ Réstanos ahora resolver las excepciones formuladas contra la demanda por la viuda y herederos de José D. Riera. Se alega que las acciones ejercitadas están prescritas de acuerdo con el artículo 41 del Código de Enjuiciamiento Civil. De los hechos de la demanda surge que el causante de la demandante falleció en 17 de octubre de 1927 y que el presente litigio se inició en 1933. Dispone el artículo citado que si una persona con derecho a ejercitar una acción muriese antes de terminar el período de prescripción requerido para aducir aquélla, y la causa de la acción subsistiere, los representantes de tal persona podrán ejercitar dicha acción después de la terminación de aquel período y dentro de un año de la defunción.

Los demandados, que formulan esta excepción de prescripción, hacen constar que la misma se basa en la primera parte del artículo 41 del Código de Enjuiciamiento Civil, que hemos transcrito, y no en la segunda, que a su juicio no es aplicable a esta jurisdicción.

Interpretando la disposición mencionada, que tiene su equivalente en el artículo 353 del Código de Enjuiciamiento Civil de California, dice la Corte Suprema de dicho estado en el caso de *Lowell* v. *Kier,* 50 Cal. 646, 648:

"Si bien la primera cláusula del artículo 353 del Código de Enjuiciamiento Civil puede en ciertas circunstancias prolongar el tiempo originalmente prescrito, no puede, sin embargo, operar en ningún caso para acortar dicho tiempo."

Hemos declarado que la primera causa de acción prescribe a los quince años. Cuando se interpuso la demanda no había expirado aún el plazo fijado por la ley para el ejercicio de esta acción. En cuanto a la segunda causa de acción, hemos dicho que no surge de los hechos alegados en la demanda que la misma esté prescrita. El artículo 41, en su primera cláusula, no puede tener el efecto de acortar el término señalado para la prescripción. Como dice el tribunal de Ca-

lifornia, puede, en ciertas circunstancias, prolongarlo, pero en ningún caso reducirlo.

La viuda y herederos de Riera, partiendo de la base de que los Sres. González, Fabián y José D. Riera constituyeron una sociedad, sostienen que no existe causa de acción contra los demandados, porque si alguna causa de acción hubiera, sería contra la referida sociedad. No hay base en la demanda para sostener que estos señores hayan constituído una asociación con todos los elementos característicos y fundamentales de la sociedad. Los demandados, que ofrecen esta excepción, se basan en que en el párrafo segundo de la demanda se dice que el demandado Manuel González Martínez, allá por el mes de marzo de 1920, se asoció con los Sres. Rafael Fabián y Fabián y José D. Riera para organizar una persona jurídica. Del uso de esta palabra no podemos llegar a la conclusión de que los referidos señores constituyeron una sociedad. Esta es una cuestión de hecho que no surge de la demanda y que debe resolverse por la prueba. Entonces habrá oportunidad de discutir la cuestión de derecho planteada por los demandados.

Se alega además que la acción ha prescrito de acuerdo con el artículo 949 del Código de Comercio de Puerto Rico que dice así:

"La acción contra los socios gerentes y administradores de las compañías o sociedades terminará a los cuatro años a contar desde que por cualquier motivo cesaren en el ejercicio de la administración."

Se asume en esta excepción que José D. Riera era socio gestor de la sociedad colectiva González, Fabián y Riera, y que cesó como tal gestor desde el momento de ocurrido su fallecimiento en 6 de mayo de 1920. Se arguye que si alguna acción existía contra dicho señor por sus actuaciones como tal gestor de dicha entidad mercantil, estas acciones debieron haberse entablado dentro de los cuatro años después de ocurrido su fallecimiento. Ya hemos dicho que no surge de la demanda que se haya constituído la sociedad a que hacen re-

ferencia los demandados. No es, por lo tanto, necesario discutir la cuestión planteada por los demandados, debiendo desestimarse las excepciones formuladas.

Se alega por último que de acuerdo con la segunda causa de acción la apropiación de los $550,000 por los Sres. Fabián, González y Riera ocurrió en 27 de mayo de 1920, siendo así que José D. Riera falleció el día 6 de dichos mes y año, o sea con algunos días de anterioridad a la fecha en que los referidos señores aparecen adueñándose de la referida suma. Es claro que Riera no pudo haber intervenido en el acto de la apropiación, ocurrida según la demanda después de su muerte. No se alega que la viuda de Riera y sus herederos hayan recibido beneficio alguno de los fondos apropiados. Si no consta que hayan participado de esa suma, no surge responsabilidad alguna de su parte para con la demandante. Debe declararse con lugar la excepción de falta de hechos con respecto a esta segunda causa de acción, por las razones apuntadas, concediéndose a la demandante un plazo de diez días para enmendar la demanda, si es que ésta está en condiciones de hacerlo.

*Debe revocarse la sentencia apelada y declararse con lugar únicamente la excepción previa formulada por la viuda y herederos de Riera contra la segunda causa de acción, concediéndole diez días a la demandante para enmendar la demanda, a constar desde la fecha en que el pleito sea devuelto a la corte inferior para ulteriores procedimientos no incompatibles con los términos de esta opinión.*

### EN MOCION DE RECONSIDERACION

Abril 3, 1936

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión tribunal.

Los demandados Manuel González Martínez y Josefina Fabián de Lozana solicitan la reconsideración de nuestra sentencia por entender que la misma es errónea en tanto en cuanto considera el convenio celebrado entre el causante de

la demandante y los demandados como un contrato de mandato. Hemos estudiado las cuestiones planteadas a través de los errores atribuídos a la corte inferior en la opinión que sirvió de base a la sentencia apelada. Dijimos que la relación establecida entre los Sres. González, Fabián y Riera y las personas que entregaron su dinero para la adquisición de los bienes de las compañías ferrocarrileras es una de carácter fiduciario. Luego expusimos nuestro criterio acerca de la relación de íntima confianza que se establece entre mandante y mandatario y entre principal y agente, exponiendo el criterio de Manresa en cuanto al derecho civil y del comentarista Pomeroy en cuanto a la jurisprudencia americana. No hay duda alguna de que los Sres. González, Fabián y Riera, al aceptar la encomienda de utilizar los fondos recibidos para adquirir los bienes de las compañías ferrocarrileras, se convirtieron en agentes de las personas que les entregaron esos fondos para dicho fin. Si esta relación constituye o no un contrato de mandato en el derecho civil es cuestión que carece de importancia. Ya dijimos en nuestra opinión que ''cualquiera que sea el nombre que se dé a la relación contraída por los Sres. González, Fabián y Riera con los suscritores del fondo, no puede negarse que la misma, tomando como ciertas las alegaciones de la demanda, tiene carácter fiduciario.''

''En el presente caso,'' añadimos, ''de acuerdo con las alegaciones de la demanda, los suscritores entregaron su dinero a los Sres. González, Fabián y Riera para un propósito común: la adquisición de los bienes corporales e incorporales de las compañías ferroviarias. Con ese único fin se entregó el dinero a los tres señores anteriormente mencionados. El principio aplicable es el mismo, de acuerdo con la razón natural y los principios generales de derecho. Lo esencial es que surja una relación fiduciaria, tanto en el orden civil como en el mercantil, como ocurre en el presente caso, en que según las alegaciones se entregó un dinero para

cierto propósito y se dispuso del mismo para fines particulares por las personas encargadas de cumplir las voluntad de los suscritores. En estas razones nos basamos para sostener que los hechos alegados en la demanda establecen una causa de acción.''

Alegan los apelados comparecientes que aún dando por supuesto que la relación jurídica establecida entre las partes, según se alega en la demanda, tuviera el carácter de fiduciaria del mandato, esta corte ha incurrido en error al aplicar a la controversia principios de jurisprudencia absolutamente extraños y contrarios al derecho positivo que regula, histórica y tradicionalmente, en Puerto Rico y en España, el contrato de mandato.

No compartimos el criterio de los distinguidos abogados que así discurren para sostener sus puntos de vista con respecto a esta importantísima cuestión. Muy deficiente y poco previsor sería nuestro derecho civil si permitiese que una persona, en posesión de bienes ajenos obtenidos para un fin determinado, pudiese beneficiarse apropiándose esos bienes y destinándolos a fines distintos, mediante actos que han tenido su sanción hasta en nuestras leyes penales. Nuestro derecho civil, saturado de principios de equidad, tiene su origen en el derecho romano. Esa razón natural, de acuerdo con los principios generales del derecho que deben tener en cuenta los tribunales cuando no haya ley aplicable al caso, es la misma equidad definida en el Código de las Pandectas, que halló cabida en el artículo séptimo de nuestro Código Civil y que aparece esbozada, aunque no con tanta amplitud, en el artículo sexto del Código Civil Español. Los principios de equidad comenzaron a aplicarse en Inglaterra por las cortes de cancillería, y en la antigua Roma por sus pretores. Un filósofo antiguo define la verdadera naturaleza de la equidad diciendo que es la corrección de la ley, cuando ésta resulta deficiente por razón de su universalidad. El caso de *Stewart* v. *Jones,* 219 Mo. 614, 131 Am. State Rep. 606, cita là definición de Aristóteles, que ha sido apro-

bada por autores tan distinguidos como Grotius, Puffendorf, Blackstone y Story, y dice que la ley se siente frecuentemente enriquecida y complementada por los principios de equidad y que la máxima "la equidad sigue a la ley" ha jugado un importante papel en la administración de justicia. Story dice que esta máxima significa que la equidad sigue las reglas de la ley en todos los casos en que estás reglas pueden ser aplicables o que la equidad, al confrontarse con casos de naturaleza equitativa, adopta y sigue las analogías ofrecidas por las reglas de la ley.

Se arguye que en la opinión de esta corte se afirma reiteradas veces que la relación contraída por los Sres. González, Fabián y Riera con los suscritores del fondo tiene carácter de fiduciaria y que de acuerdo con esta conclusión este tribunal viene obligado a determinar si habían sido o no infringidas las disposiciones del Código Civil aplicables al mandato, única legislación, a juicio de los demandados, reguladora de los contratos que engendran relaciones de carácter fiduciario. Ésta es una cuestión que fué suficientemente discutida en nuestra opinión. Dijimos entonces y repetimos ahora que "aunque el artículo 1615 del Código Civil, edición 1930, dice que el mandatario debe intereses de las cantidades que aplicó a uso propio desde el día en que lo hizo, esto no quiere decir que el mandante quede limitado a exigir exclusivamente los intereses de las cantidades aplicadas a uso propio. Cuando el mandatario dispone de los fondos en su poder para su uso particular, el mandante puede reclamar el interés si no ha habido beneficios, y si los hay, entonces puede elegir entre reclamar el interés o las ganancias percibidas. La persona que se ha enriquecido torticeramente, no debe tener derecho a retener en su poder, contra la voluntad del mandante, los beneficios obtenidos. Sostener lo contrario equivaldría a concederle un premio por su actuación ilegal, que convertiría en un negocio lucrativo y beneficioso el acto torticero de haber utilizado para su propio beneficio los fondos pertenecientes a su mandante. El mandatario, según nuestro

código, no puede traspasar los límites del mandato. Cuando se excede en sus atribuciones, llegando al extremo de utilizar para su uso particular los fondos que obtuvo en virtud de la confianza en él depositada, debe responder al mandante de las ganancias que dicho uso haya podido proporcionarle.''

Como hemos dicho, la persona que tiene fondos en poder de un tercero, no debe quedar limitada a reclamar los intereses, cuando esos bienes han sido utilizados ilegalmente por el poseedor como si fuesen suyos, para su propio beneficio, y se han obtenido ganancias en virtud de la negociación ilegal. Esto para el caso de que la relación contraída se regule por las disposiciones relativas al mandato. Pero, si como afirman los demandados, no se trata en este caso de un contrato de mandato, entonces no existe la limitación que a su juicio impone el artículo 1615 del Código Civil, porque sus disposiciones resultarían inaplicables. Que la relación contraída entre los Sres. González, Fabián y Riera con los suscritores del fondo es de carácter fiduciario es cosa que no puede negarse. El contrato de mandato, con todas sus características, no establece una relación de confianza, más íntima y estrecha que la que surge de las alegaciones de la demanda. Los Sres. González, Fabián y Riera aceptaron los fondos confiados a su custodia para destinarlos a un fin determinado. Actuaron, por lo tanto, como agentes ejecutores de los dueños de esos fondos, que depositaron en ellos su confianza. Si la relación contraída es de carácter fiduciario, no importa que se llame mandato o agencia, o que se conozca con cualquier otro nombre, para los fines de la responsabilidad de los demandados, con respecto a las ganancias obtenidas, de acuerdo con las alegaciones de la demanda.

Se alega que es errónea la decisión de esta corte al sostener que la acción ejercitada por la demandante debe regularse en lo que a la prescripción concierne por el artículo 1864 del Código Civil. Se dice que como quiera que esta Corte Suprema considera que la relación jurídica y fiduciaria

existente entre las partes tiene el carácter de un mandato, hay que atenerse, para determinar la naturaleza de la acción ejercitada, a las disposiciones del Código Civil que amparan el derecho del mandante perjudicado. "Siendo ello así, y habida cuenta de los hechos que a los demandados se imputan para fijar el término de prescripción, es de una lógica abrumadora concluir que la acción ejercitada por la demandante tiene por único objeto obtener resarcimiento de daños y perjuicios, sin parar mientes en el título que la parte actora haya puesto a su demanda." Así se expresan los demandados, afirmando que nos hemos equivocado al sostener que la demandante no reclama indemnización de daños y perjuicios y sí el importe de una ganancia que ha dejado de obtener como consecuencia de la conducta de los demandados. La equivocación que se nos atribuye no existe. Hemos sostenido que en el presente caso no se solicita la nulidad de contrato alguno ni se ejercita una acción subsidiaria de daños y perjuicios. Los demandados citan en su abono el artículo 1073 del Código Civil (1059, ed. 1930), según el cual la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido sino el de la ganancia que haya dejado de obtener el acreedor.

Las ganancias a que se refiere el artículo citado son aquéllas que el acreedor pudo obtener y dejó de percibir en virtud del incumplimiento de la obligación. En este caso no se ha privado al causante de la demandante de ninguna ganancia que pudo obtener y dejara de percibir en virtud del incumplimiento de la obligación. Se reclaman simplemente beneficios obtenidos por los demandados en una negociación en que utilizaron para su propio beneficio un dinero confiado a su custodia, que pertenecía a los suscritores del fondo. Scaevola y Manresa, al comentar el artículo citado por los demandados, hablan del daño emergente y el lucro cesante, en las particulares aplicaciones que les asignaba el

antiguo derecho. Refiriéndose al lucro cesante dice Scaevola entre otras cosas lo siguiente:

"Interés del lucro cesante se dice que es la ganancia dejada de obtener o la pérdida de ganancias sufrida en el dinero o en la cosa debida y no pagada en el tiempo convenido. También este interés se distingue en intrínseco y extrínseco, llamándose de la primera manera al precio que hubiera podido obtener la cosa en venta el día en que la obligación debió cumplirse y no se cumplió, y distinguiéndose el segundo en dos clases, *circa rem* y *extra rem*, que son: el primero, el que proviene de la misma cosa, como los frutos, el parto de los ganados y cuasifrutos, como el alquiler de los arrendamientos, y el segundo, el que proviene de la cosa, no directa, sino indirectamente, como el pago de las usuras a los mercaderes."

Terminan diciendo los demandados "que la demanda encaminada a reclamar la ganancia de que se alega fué privado el causante de la demandante, es técnica y jurídicamente una reclamación de daños y perjuicios, que por tener como base el dolo, el fraude o el enriquecimiento torticero, que es una actuación dolosa, prescribe a los cuatro años, a contar desde la consumación del contrato." No vemos cómo pueda aplicarse el artículo 1253 del Código Civil, que fija el término de cuatro años para el ejercicio de la acción de nulidad de contrato, cuando no se solicita en la demanda la nulidad de contrato alguno y cuando, aún en la hipótesis de que se ejercitara la acción de daños y perjuicios, lo que hemos negado, no sería aplicable el término que fija el referido artículo para la duración de la acción de nulidad de contrato. En cuanto a la segunda causa de acción, nos atenemos a las conclusiones establecidas en nuestra opinión.

También los demandados Sra. viuda y herederos de José D. Riera han presentado una moción de reconsideración basándose en cuestiones que fueron resueltas en nuestra opinión y que a nuestro juicio no requieren una más amplia consideración.

*No ha lugar a la reconsideración solicitada.*