## SIEGRIST v. O'DONNELL.

### No. 11432.

Court of Civil Appeals of Texas.
San Antonio.

Aug. 2, 1944.

Kelley & Looney, L. Hamilton Lowe, and Ralph T. Rawlins, all of Edinburg, for appellant.

Orville I. Cox, of McAllen, and A. W. Taylor, of Edinburg, for appellee.

MURRAY, Justice.

This is a suit by J. J. O'Donnell against Clarence J. Siegrist seeking to recover the sum of $2,000, alleged to be a secret profit made by Siegrist while acting as a partner or agent of O'Donnell in the purchase of an 80-acre tract of land located in Willacy County, Texas, near the town of Hargill.

Prior to March, 1943, plaintiff, J. J. O'Donnell, who resided in Chicago, Illinois, was the owner of an 80-acre citrus grove in the Rio Grande Valley near the town of Hargill. The defendant, Clarence J. Siegrist, who lived in Hidalgo County, Texas, was caring for the grove under a contract. During the month of March, 1943, O'Donnell came to the Rio Grande Valley to inspect his citrus grove. At this time Siegrist told O'Donnell that he could not further care for his citrus grove as it was located too far from his home. O'Donnell was anxious to have Siegrist continue to care for his orchard. They finally agreed that O'Donnell would purchase another 80-acre tract and that Siegrist would also purchase him an 80-acre tract. That these two new tracts would be set out in young trees and that Siegrist would take care of the three tracts. Siegrist agreed to recommend to O'Donnell the 80 acres that he should purchase.

On June 13, 1943, Siegrist wrote O'Donnell as follows:

"* * * I spoke with the McAllen CC man about his place in Hargil and he still insists on holding half the mineral rights, and it will take $8,000.00 to get it. I thought that a little high, that is why I didn't write you about it. He sure is an independent person or rather, he's independent about his property. But I guess he has a right to be as he really does have just about the most perfect piece (of 80 acres) in Willacy County. I guess after

404

the way land prices are going up here, his is a pretty good buy after all. * * *

"I'm trying to get the price of the land just west of the cola man's 80. You recall perhaps where there was the hog lot? It is not quite as nice as the cola 80 but is a very good piece of land. I believe I can get it for a little less money. It would not have the resale value the cola 80 would have, but if I buy it I would want to keep it and it would grow just as good fruit. I wouldn't guarantee that the cola 80 acres is still for sale as there were a couple parties considering it. *But anyway, if you decide you want it, send your check for $8,000.00 made out to Brown & Bader trustees and if it is still for sale and the title O.K. when Mr. Bader examines it, he can pay the cola man. * * *"* (Emphasis ours.)

On June 17, 1943, O'Donnell wrote Siegrist, enclosing cashier's check payable to Brown & Bader in the sum of $8000 and saying:

"* * * I think there are two people more anxious to own that land than the McAllen Coca Cola man. Those two people are you and I, * * *.

"I am very happy to learn that you are able to secure an adjacent eighty acres, for as you know I would not be interested in having any more land up there unless I had you as a neighbor, and I am wholeheartedly in agreement with you that the present eighty I now have at Hargill will carry itself and pay for the care and upkeep of the other two groves until such time as they start to pay for themselves. In other words, the agreement would be that we lump the whole thing (the three eightys) together as one and operate it as such. * * * This certainly sounds to me like a wonderful set-up. *However, if you feel that the Coca Cola man's offer is not the one I should have, and if you see something adjacent that you think would be a wiser buy, just use your own good judgment and go ahead.*" (Emphasis ours.)

On June 22, 1943, Siegrist entered into a contract in his own name with V. E. Cook of McAllen for the purchase of the 80 acre tract for $6,000 in cash, subject to title examination.

On June 27, 1943, Siegrist wrote O'Donnell as follows:

"* * * Well, I believe you are going to get the Cola place in Hargill, Mr. Bader has the abstract and said he would get right on to it and check it to see if everything about the title is O. K.

"You were sure lucky if you get it as another party really wanted it but couldn't raise the cash, it certainly is a beautiful tract of land, I believe one of the best if not the best around Hargill."

On July 8, 1943, O'Donnell wrote Siegrist acknowledging receipt of the above letter and saying: "* * * Also pleased to learn that the outlook of getting the Cola property looks very promising. I am still waiting to hear from Mr. Bader regarding it. I agree with you that I am very fortunate in getting this property, * * *. I hope that you have been able to secure your eighty before this time. * * *"

On July 12, 1943, Siegrist wrote O'Donnell saying Mr. Bader had said the title to the Cook 80 acres was O. K. except for some minor things, which would be corrected; but that he (Siegrist) had "lost out" on the deal on the property next to the Cook 80 acres.

On July 15th Siegrist wrote O'Donnell that the attorney had passed the title to the Cook 80 acres, and that the deed to Mr. O'Donnell had been sent to the Courthouse for recording. The deed was made direct from Cook to O'Donnell.

There was considerable other correspondence passing between the parties when finally, on July 27, 1943, Siegrist wrote O'Donnell to the effect that all agreements between them as to his taking care of O'Donnell's citrus grove were off. He gave as his reason ill health.

Shortly thereafter O'Donnell came to the Rio Grande Valley and learned for the first time that Siegrist had made a secret profit of $2000 in the purchase of the Cook tract, whereupon O'Donnell filed this suit to recover the amount of this secret profit.

The cause was submitted to the jury upon one issue, to-wit:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that during the month of March, 1943, the defendant, Clarence Siegrist, agreed with the plaintiff, J. J. O'Donnell, to act as O'Donnell's agent in acquiring an eighty acre tract of land near Hargill, Texas?" which the jury answered, "Yes."

Upon this verdict, judgment was entered in the principal sum of $1406, which was the amount sued for, less the sum of $594

allowed Siegrist for services rendered in caring for the citrus grove. From this judgment Siegrist has appealed.

We have concluded that all of the points presented by appellant are immaterial as an instructed verdict for O'Donnell would have been proper in the first place.

■ The evidence conclusively shows that Siegrist not only agreed to act as agent for O'Donnell in the purchase of the Cook 80 acre tract, but he did in fact so act. He attempted to make a secret profit of $2000 off his unsuspecting principal who resided in a distant state. This the law will not permit him to do. If the agent makes a secret profit without the full knowledge of his principal he must disgorge.

In Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 513, Justice Critz, speaking for the court, said:

"We are unable to agree that the facts of this case bring it within any rule that would make Turner's act and conduct in this instance measure up to the rule of fair dealing and good faith towards Kinzbach, which the law required of him. It is the duty of a fiduciary to deal openly, and to make full disclosure to the party with whom he stands in such relationship. (Citing cases.) One occupying a fiduciary relationship to another must measure his conduct by high equitable standards, and not by the standards required in dealings between ordinary parties. (Citing cases.) Turner's position as a trusted employee of Kinzbach, in the capacity already detailed, called on him to make full disclosure to his employer of all the facts and circumstances concerning his dealings with Corbett. *Also, when he received instructions from Kinzbach to get a price from Corbett it was his duty as a fiduciary to inform his employer what the whipstock contract might be bought for.* It was also his duty to make disclosure to his employer that he was getting a commission from Corbett.

*"It is beside the point for either Turner or Corbett to say that Kinzbach suffered no damages because it received full value for what it has paid and agreed to pay. A fiduciary cannot say to the one to whom he bears such a relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous*

*precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired.* It is the law that in such instances if the fiduciary 'takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.' United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 520, 54 L.Ed. 769, 775, 19 Ann.Cas. 594. See also Ash v. A. B. Frank Co., Tex.Civ.App., 142 S.W. 42; Armstrong v. O'Brien, 83 Tex. 635, 19 S.W. 268." (Emphasis ours.)

The judgment is affirmed.

### On Motion for Rehearing.

■ In our original opinion we state: "They finally agreed that O'Donnell would purchase another eighty-acre tract and that Siegrist would also purchase him an eighty-acre tract. That these two new tracts would be set out in young trees and that Siegrist would take care of the three tracts."

Appellant, in his motion for rehearing, challenges this statement as being unsupported by the uncontradicted evidence. It is true that Siegrist did testify that he did not agree to this arrangement. We have set out a large part of the correspondence between O'Donnell and Siegrist leading up to the purchase of the 80-acre tract by O'Donnell, out of which Siegrist made a secret profit of $2,000.

It is clear from this correspondence that O'Donnell believed that Siegrist had agreed to this partnership and that O'Donnell was trusting Siegrist as a partner throughout this entire transaction.

Siegrist was bound to know that O'Donnell was making this deal upon the belief that he, Siegrist, had entered into this partnership and it became the duty of Siegrist to inform O'Donnell of his mistake. Siegrist, by his silence and by his affirmative acts in inducing O'Donnell to make this purchase, is not now in a position to contend that he never expressly agreed to the partnership. Therefore we adhere to our original finding that throughout this transaction Siegrist was the partner, or at least the agent, of O'Donnell.

Appellant's motion for rehearing is overruled.