**Nick JOHNSON and James W. Chang, Petitioners,**

v.

**BREWER & PRITCHARD, P.C., Respondent.**

No. 00–0081.

Supreme Court of Texas.

Argued Oct. 4, 2000.

Decided March 21, 2002.

---

William P. Maines, Thomas R. McDade, McDade Fogler Maines & Lohse, Robert Lee Galloway, Grant Cook, Thompson Knight Brown Parker & Leahy, Houston, for petitioners.

Russell Starbird, Houston, G. Steven Ruprecht, Niewald, Waldeck & Brown, Kansas City, MO, Patrick E. Gaas, J. Mark Brewer, Brewer & Pritchard, Houston, for respondent.

Justice OWEN delivered the opinion of the Court in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice BAKER, Justice HANKINSON, Justice JEFFERSON and Justice RODRIGUEZ joined.

The primary issue in this case is when an associate of a law firm may refer a matter to another firm or lawyer without breaching a fiduciary duty to his or her employer. Brewer & Pritchard, P.C. sued its former associate and another lawyer with whom that associate formed a partnership, asserting causes of action for breach of fiduciary duty, actual and constructive fraud, conversion, and negli-

gence. The trial court granted summary judgment in favor of the former associate and his partner on all claims. The court of appeals reversed in part, remanding the breach of fiduciary duty and constructive fraud causes of action against both defendants.

■ We hold that an associate owes a fiduciary duty to his or her employer not to personally profit or realize any financial or other gain or advantage from referring a matter to another law firm or lawyer, absent the employer's agreement otherwise. Although our reasoning differs from the court of appeals', we affirm that court's judgment.

## I

James Chang and Nick Johnson, the defendants in this case, filed a motion for summary judgment pursuant to Rule 166a(c) as to certain causes of action or elements thereof and pursuant to Rule 166a(i) as to others. Although some of the facts are disputed, we consider the record in a light most favorable to Brewer & Pritchard, who was the nonmovant. We accept the summary judgment evidence offered by Brewer & Pritchard, the nonmovant, as true in determining if there is a genuine issue of material fact.[1]

Brewer & Pritchard employed James Chang as an associate. His practice was devoted to corporate securities and other corporate transactional matters. One of Chang's close personal friends was Henry King. They had been members of the same fraternal organization during their college years and had been friends for eleven years before the events that gave rise to this suit took place.

In April 1995, while Chang was employed by Brewer & Pritchard, he and Henry King were together on a ski vacation when King's father Herbert King and several members of a delegation from China were severely injured in a helicopter crash that occurred near Flower Mound, Texas. Chang returned home two days later and talked to two members of Brewer & Pritchard about the possibility that the firm might be retained to represent the crash victims. Chang asserted that because Henry King's father and Chang's mother were friends, and because of Chang's ties to the Chinese community, he could "control the case and could 'sign up' the crash victims." Chang said that he expected Brewer & Pritchard "would make a lot of money handling the case." One of the Brewer & Pritchard partners, Patrick Gaas, discussed with Chang how to structure a contingent fee agreement and issues that could arise. Gaas explained to Chang the possibility of referring the case to another firm and how to structure a referral fee agreement. Gaas mentioned the names of several prominent personal injuries lawyers to whom the case might be referred. Chang asserted that he was in the best position to consummate an agreement with the crash victims. Chang likewise told the other partner with whom he discussed this matter, Thomas Pritchard, that the case was "a significant business opportunity for our firm." Chang asked Pritchard if he would be available to travel to Denton, Texas, if needed, to which Pritchard responded that he would assist in any way that he could. Chang did not tell either Gaas or Pritchard that Henry King was a personal friend, that Chang considered Herbert King to be his "surrogate father," or that Chang intended to assist King as a family friend without payment.

Chang scheduled meetings for Henry King with several personal injury lawyers

---

1. *M.D. Anderson Hosp. & Tumor Institute v.* *Willrich,* 28 S.W.3d 22, 23 (Tex.2000).

and firms. Chang accompanied King at all of those meetings. One of the attorneys they consulted was Nick Johnson, a close friend of Chang's since they had been in law school together. Henry King and Johnson were also friends. They had become acquainted six or seven years earlier through Chang.

Chang billed to Brewer & Pritchard's business development file faxes to and from Henry King, Nick Johnson, and another personal injury lawyer in Houston. Chang also billed to the same file long distance telephone calls to the hospital where Henry King's father was being treated and to the hotel where the King family was staying, and Chang billed shipping charges on a package from Henry King to the same file.

Five days after the crash, Henry King signed a contingent fee agreement with Nick Johnson during or shortly after a meeting at which Chang was present. Johnson told King at that meeting that he would "flip" the case to the firm of Jamail & Kolius. The next day, Johnson consummated an agreement with Jamail & Kolius, referring the matter for fifty-percent of the net fee. Jamail & Kolius had been among the several firms and lawyers with whom Chang and King had previously met. Joe Jamail and Johnson subsequently met with other victims of the crash who were hospitalized in Fort Worth, and Jamail and Johnson were retained to represent them as well as the survivors of a victim who was killed in the crash. All the claimants other than the King family were citizens of China, and suit was filed in federal court. There is evidence that Johnson actively participated as co-counsel with the Jamail & Kolius firm in representing the Kings and the other crash victims in that suit.

When Chang was asked by Brewer & Pritchard how he was progressing in reaching an agreement with the crash vic-

tims, he said that the firm "had lost out" and that the Jamail firm had been retained. He disclaimed any knowledge of how that firm had procured the representation.

Chang left Brewer & Pritchard about two months after the crash occurred to work for another firm that had a corporate securities practice. The King family's personal injury suit was settled a little more than a year after that, in October 1996, and Nick Johnson received a $3,000,000 fee. It is unclear from the record whether that fee was solely referable to the Kings' claims or whether it also included a fee from the other crash victims who were citizens of China. About a year later, at the end of 1997, Chang left the firm with which he had been working and formed a partnership with Nick Johnson.

Brewer & Pritchard first sued Johnson and Chang in October 1996, when the helicopter crash suit was settled, which, as noted above, was about a year before Johnson and Chang became law partners. Brewer & Pritchard contended Chang had breached a fiduciary duty that he owed to Brewer & Pritchard and that Johnson had knowingly assisted Chang in committing that breach. Specifically, Brewer & Pritchard alleged that Chang directly or indirectly profited by receiving or arranging to receive all or part of Johnson's referral fee. Brewer & Pritchard sought actual and exemplary damages. When Brewer & Pritchard's case was set for trial and after Johnson and Chang had filed a motion for summary judgment addressing all claims, Brewer & Pritchard filed a notice of non-suit. On the same day that the notice of non-suit was filed, Brewer & Pritchard filed a second, identical suit. Johnson and Chang filed a motion for summary judgment in that case, which the trial court granted.

Brewer & Pritchard appealed. The court of appeals held that fact questions remained as to whether Chang had breached a fiduciary duty and whether Johnson had knowingly assisted Chang.[2] It accordingly reversed the trial court's judgment in part, and remanded the breach of fiduciary duty and constructive trust claims. The court of appeals otherwise affirmed the trial court's judgment.

We granted Johnson's and Chang's petition for review and Brewer & Pritchard's conditional petition for review. For the reasons discussed below, we affirm the court of appeals' judgment, although the basis for our judgment differs from the court of appeals'. We turn first to Johnson's and Chang's petition for review and the breach of fiduciary duty cause of action.

## II

Brewer & Pritchard asserts that throughout Chang's employment, he owed a fiduciary duty to put the firm's interests above his own and to refrain from taking actions detrimental to the firm. The firm alleges that Chang "seize[d] for himself what he perceived to be a lucrative business opportunity," thereby breaching a fiduciary duty. Brewer & Pritchard also asserts that it had policies forbidding associates from practicing law for their own account, engaging in employment of any kind other than their employment with the firm, or referring cases without securing a referral fee for Brewer & Pritchard. The firm contends that its actual damages for Chang's breach of fiduciary duty are the amount of the referral fee that Nick Johnson obtained in connection with the helicopter crash.

Johnson and Chang argue that as a matter of law Chang owed no fiduciary duty to Brewer & Pritchard. They assert that Chang had no employment agreement with Brewer & Pritchard and that an associate does not owe a fiduciary duty to his or her firm "merely as a result" of being employed.

Fiduciary duties are imposed by courts on some relationships because of their special nature. We recounted in *Kinzbach Tool Co. v. Corbett–Wallace Corp.*[3] that the "term 'fiduciary' is derived from the civil law."[4] We recognized that it "is impossible to give a definition of the term that is comprehensive enough to cover all cases."[5] We said, "[g]enerally speaking, it applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction."[6] Our courts have long recognized that certain fiduciary duties are owed by a trustee to a beneficiary of the trust,[7] an executor to the beneficiaries of an estate,[8] and an attorney to a client.[9] We have historically held that partners also owe certain fiduciary duties to one another.[10] We need not consider here the

**2.** *Brewer & Pritchard v. Johnson*, 7 S.W.3d 862, 868 (Tex.App.-Houston [1st Dist.] 1999).

**3.** 138 Tex. 565, 160 S.W.2d 509 (1942).

**4.** *Id.* at 512.

**5.** *Id.*

**6.** *Id.*

**7.** *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996).

**8.** *Id.*

**9.** *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999).

**10.** *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex.1998).

impact of the provisions of the Texas Revised Partnership Act on duties partners owe to one another.[11]

Under the common law of most jurisdictions, including Texas, agency is also a special relationship that gives rise to a fiduciary duty.[12] The Restatement (Second) of Agency sets forth in general terms the concept that "[u]nless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."[13] In elaborating on the extent of this fiduciary duty, the Restatement (Second) says:

> The agreement to act on behalf of the principal causes the agent to be a fiduciary, that is, a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking. Among the agent's fiduciary duties to the principal is the duty to account for profits arising out of the employment, the duty not to act as, or on account of, an adverse party without the principal's consent, the duty not to compete with the principal on his own account or for another in matters relating to the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them.[14]

In virtually all of the cases that we have found in which an agent diverted an opportunity from the principal or engaged in competition with the principal, the agent or an entity controlled by the agent profited or benefitted in some way.[15] That was the situation in *Kinzbach Tool*.[16] The principal directed its employee to act as its agent in negotiating the purchase of an oilfield tool. Unbeknownst to the principal, its agent had already had conversations with the seller of the tool, and the seller had agreed to pay the agent a commission of $5,000 that would be undisclosed to the principal. We held that the agent had a fiduciary duty to disclose this arrangement in its entirety[17] and to disgorge any compensation he received from the seller, even though the principal was willing to pay the full price desired by the seller:

> It is beside the point for either Turner or Corbett to say that Kinzbach suffered no damages because it received full value for what it has paid and agreed to pay. A fiduciary cannot say to the one to whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired. It is the law that in such instances if the fiduciary "takes any gift, gratuity, or benefit in

---

11. Tex.Rev.Civ. Stat. Ann. art. 6132b–4.04.

12. *Kinzbach Tool,* 160 S.W.2d at 513.

13. Restatement (Second) of Agency § 387 (1958).

14. *Id.* § 13, cmt. a (1958).

15. *See, e.g., SHV Coal, Inc. v. Continental Grain Co.,* 376 Pa.Super. 241, 545 A.2d 917, 920 (1988); *New World Fashions, Inc. v. Lieberman,* 429 So.2d 1276, 1276–77 (Fla.App.

1983); *Emmons v. Alvord,* 177 Mass. 466, 59 N.E. 126, 127 (1901).

16. 160 S.W.2d at 511.

17. *Id.* at 513–14 (citing Mecham on Agency §§ 953, 469; also citing *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786 (1938); *Scott v. Weaver,* 2 S.W.2d 870 (Tex.Civ.App.-Austin 1927, writ dism'd); *Parks v. Schoellkopf Co.,* 230 S.W. 704 (Tex.Civ.App.-Amarillo 1921, no writ)).

violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received."[18]

Consistent with our holdings in *Kinzbach,* the court of appeals held in *Siegrist v. O'Donnell,*[19] that an agent who agreed to accept a $2,000 profit from the person with whom he was dealing on behalf of his principal must disgorge that profit.[20]

However, courts have been and should be careful in defining the scope of the fiduciary obligations an employee owes when acting as the employer's agent in the pursuit of business opportunities. For example, in *Bray v. Squires,*[21] the court of appeals delineated obligations that an associate of a law firm does and does not owe to his or her employer. While there are some overly broad statements in *Bray* to the effect that an associate owes a fiduciary duty to his or her firm based merely on the employment relationship, the court's ultimate analysis and holding were correct. In that case, three associates made plans to form their own firm while still employed by Bray & Associates. They had discussions with one of Bray's largest clients before their departure. That client subsequently moved its business to the associates' new firm. When Bray then sued his former employees, the jury failed to find a breach of fiduciary duty. In affirming the trial court's rendition of judgment based on that finding, the court of appeals correctly acknowledged that the associates could not compete with their employer while he still employed them.[22] But the

court held that there was evidence from which the jury could have concluded that the associates did not improperly solicit Bray's client. There was evidence that the client was not asked to and did not agree that it would move its business while the associates were still at the Bray firm but only expressed an interest in pursuing a relationship if certain contingencies unrelated to the associates' formation of their own firm occurred.

The *Bray* decision was consistent with decisions in other jurisdictions which have held that an employee does not owe an absolute duty of loyalty to his or her employer. As the Supreme Judicial Court of Massachusetts explained in *Augat, Inc. v. Aegis, Inc.,*[23] an employer's right to demand and receive loyalty must be tempered by society's legitimate interest in encouraging competition:

It is important to define the limited basis for liability we recognize in this case. An at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed.... Such an employee has no general duty to disclose his plans to his employer, and generally he may secretly join other employees in the endeavor without violating any duty to his employer.... The general policy considerations are that at-will employees should be allowed to change employers freely and competition should be encouraged.... If an employer wishes to restrict the post-employment competitive activities of a key employee, it may seek that goal through a non-competition

---

18. *Id.* at 514 (citations omitted).

19. 182 S.W.2d 403 (Tex.Civ.App.-San Antonio 1944, writ ref'd).

20. *Id.* at 405.

21. 702 S.W.2d 266 (Tex.App.-Houston [1st Dist.] 1985, no writ).

22. *Id.* at 270.

23. 409 Mass. 165, 565 N.E.2d 415 (1991).

agreement.... The plaintiffs did not do so in this case.

There are, however, certain limitations on the conduct of an employee who plans to compete with his employer. He may not appropriate his employer's trade secrets.... He may not solicit his employer's customers while still working for his employer ..., and he may not carry away certain information, such as lists of customers.... Of course, such a person may not act for his future interests at the expense of his employer by using the employer's funds or employees for personal gain or by a course of conduct designed to hurt the employer.[24]

■ We have no difficulty in concluding that under common-law agency principles, an associate owes a fiduciary duty not to accept a fee or other compensation for referring a matter to a lawyer or law firm other than the associate's employer without the employer's consent. The more difficult question is whether an associate can be said to have breached a fiduciary obligation to his or her employer when the associate undertakes to pursue the representation of a party on behalf of his or her employer, then participates in referring the potential client to other counsel with no compensation, benefit, or other advantage to the associate. There is evidence in the case before us that Chang specifically undertook to act as Brewer & Pritchard's agent in obtaining an agreement from the helicopter crash victims to represent them. Brewer & Pritchard also offered summary judgment evidence that its associates were not permitted to practice law for their own account or engage in employment of any kind other than their employment with that firm.

There are a number of competing considerations in deciding whether to impose a fiduciary duty under such circumstances. One of these is that under Texas rules of ethics governing lawyers, an attorney may agree to represent a client even though the attorney is not competent to handle the matter, as long as another lawyer who is competent is associated with the prior consent of the client.[25] Brewer & Pritchard argues that it would have been entitled to a substantial referral fee if Chang had "signed up" the helicopter crash victims with that firm, rather than Nick Johnson, even if Brewer & Pritchard had no intention of actually handling the case but instead intended to immediately refer it to other lawyers.

However, on balance, we think it unwise to impose an absolute fiduciary duty upon associates of a law firm to abstain from directing those with legal needs to a firm other than the associate's employer. If one of the parties injured in the helicopter crash had been Chang's mother, should Brewer & Pritchard have a cause of action for breach of fiduciary duty if Chang referred her to an experienced personal injury lawyer without securing a referral fee for Brewer & Pritchard? The answer to that question should be no.

There could be many reasons why it would be in a potential client's best inter-

---

24. *Id.* at 419–20 (citations omitted); *see also Feddeman & Co. v. Langan Assocs.*, 260 Va. 35, 530 S.E.2d 668, 672–73 (2000); *Science Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962–63 (Del.1980); *see generally Condon Auto Sales & Service, Inc. v. Crick*, 604 N.W.2d 587, 598–601 (Iowa 1999); Deborah A. DeMott, *The Lawyer as Agent*, 67 FORDHAM L.REV. 301 (1998); Vincent R. John-

son, *Solicitation of Law Firm Clients by Departing Partners and Associates: Tort, Fiduciary, and Disciplinary Liability*, 50 U. PITT. L.REV. 1 (1988); Leonard Gross, *Ethical Problems of Law Firm Associates*, 26 WM. & MARY L.REV. 259 (1985).

25. TEX. DISCIPLINARY R. OF PROF'L CONDUCT 1.01(a)(1).

est for an associate to suggest that they seek representation from a firm other than the firm for whom the associate works. For example, suppose that an existing client of a firm asks an associate if that firm handles corporate and tax matters. The associate says yes, and tells her employer that she will try to secure representation of the client in these matters. The client meets with the tax and business lawyers of the firm, but afterwards asks the associate for a frank evaluation of whether lawyers at another firm who handle such matters on a more regular basis and to the exclusion of other practice areas might be better suited. The associate should not be faced with breaching a fiduciary duty to the firm that employs her by giving an answer that leads the client to another firm.

There is evidence in this case that Brewer & Pritchard had little or no experience with personal injury claims and had never taken to trial a claim involving catastrophic personal injuries. A firm's legitimate interest in demanding loyalty from its associates should not outweigh competing considerations of the public's interest in encouraging lawyers to assist those who need legal advice in securing the most appropriate representation for the particular type of case and market competition.

■ Brewer & Pritchard contends that its policy forbidding an associate from referring a case to another lawyer or firm without compensation to Brewer & Pritchard gives rise to a fiduciary duty. We disagree. The firm's referral policy may have been a contractual condition of Chang's employment, an issue we need not decide since Brewer & Pritchard has not sued Chang for breach of contract. But a contractual obligation does not generally give rise to a fiduciary duty. The court of

appeals in *Kline v. O'Quinn* correctly held that although an agreement between lawyers recited that one would be "an 'associate' of [the other's] law firm 'for purposes of the agreement,'" there was no fiduciary duty in handling settlement proceeds arising from the matter covered by the agreement "simply because of their business ties." [26] An employee may agree in a contract with his or her employer not to make any referrals at all to another firm or lawyer, even if the employee receives no referral fee or other payment. But we will not elevate such a consensual, contractual duty into a fiduciary duty imposed by law.

■ Nor do we today set forth a broad rule governing all employees who might divert a business opportunity from their employer without receiving any compensation or benefit in return. We need not and do not decide whether there may be a fiduciary duty in other contexts. We hold only that an associate may participate in referring a client or potential client to a lawyer or firm other than his or her employer without violating a fiduciary duty to that employer as long as the associate receives no benefit, compensation, or other gain as a result of the referral. However, an associate owes a fiduciary duty not to accept or agree to accept profit, gain, or any benefit from referring or participating in the referral of a client or potential client to a lawyer or firm other than the associate's employer. With these premises in mind, we turn to the summary judgment record.

### III

■ Johnson and Chang moved for summary judgment on only one ground with respect to the claim that Chang owed and breached a fiduciary duty. That ground was that Chang was an at-will

**26.** 874 S.W.2d 776, 787 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

employee of Brewer & Pritchard and "did not owe the law firm or any of its principals *any* fiduciary obligation" (emphasis added). As we have just said, Chang did owe a fiduciary duty not to profit or gain from assisting Henry King in retaining counsel other than Brewer & Pritchard. Johnson and Chang were not entitled to summary judgment on the basis that they urged.

The court of appeals correctly observed that Johnson and Chang did not move for summary judgment on the basis that the evidence conclusively established no breach of fiduciary duty.[27] Nor did Johnson and Chang move for summary judgment under Rule 166a(i) on the basis of no evidence of breach.[28] Although Johnson's and Chang's motion for summary judgment addressed other of Brewer & Pritchard's causes of action, which included constructive fraud, conspiracy, conversion, and negligence, the sections of the motion dealing with those claims was not incorporated by reference or otherwise mentioned in the section that dealt with fiduciary duty. In a generic section at the beginning of their motion entitled "Procedural Background," Johnson and Chang set forth facts and record cites to support their contention that Chang did not agree to accept, has not received, and does not expect to receive any compensation as a result of the King suit or the agreement between Henry King and Nick Johnson and the subsequent referral to Jamail & Kolius. But in the only section of their motion that addressed the breach of fiduciary claim, Johnson and Chang did not incorporate their general discussion of these facts by reference or in any way refer to or rely on the evidence identified in the "Procedural Background" section of the motion.

As we discuss in detail in sections VI(B) and VII below, Johnson and Chang asserted in their summary judgment motion that the conspiracy and conversion claims failed because there is no evidence in the summary judgment record that Chang accepted or has agreed to accept any compensation for his role in referring the King family to Nick Johnson or his role in the subsequent referral to the Jamail & Kolius firm. But Johnson and Chang did not make these same arguments in connection with the breach of fiduciary duty claim. Thus, Johnson and Chang were not entitled to summary judgment on the basis of no breach of fiduciary duty because they did not include that ground in their motion. A court cannot grant summary judgment on grounds that were not presented.[29] Accordingly, the trial court erred in granting summary judgment on the breach of fiduciary claim, and the court of appeals properly remanded that claim.

## IV

Brewer & Pritchard alleged that Johnson and Chang were "liable to Brewer & Pritchard for their acts, omissions and concealment which involved a breach of the legal duties owing to Brewer & Pritchard, as well as a breach of trust and confidence," and that "such conduct" constituted "constructive fraud." This claim is derivative, at least in part, of the breach of fiduciary claim. Johnson and Chang moved for summary judgment on the "constructive fraud" claim solely on the basis that neither Chang nor Johnson owed Brewer & Pritchard a fiduciary duty.

27. 7 S.W.3d at 868.

28. *Id.*

29. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997) (citation omitted).

For the same reasons that the trial court erred in granting summary judgment on the breach of fiduciary duty claim, it should not have granted summary judgment on the constructive fraud claim.

## V

As an independent ground for summary judgment on all of Brewer & Pritchard's causes of action, Johnson and Chang contended that any recovery by Brewer & Pritchard of damages for its loss of a referral fee in connection with the crash victim's personal injury claims would violate Rule 1.04(f) of the disciplinary rules of professional conduct because the Kings would have objected to and do object to the participation of Brewer & Pritchard in any fee.[30] A fee sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement.[31]

The fact that Brewer & Pritchard seeks damages measured by the amount of the referral fee that it contends it would have received does not remove its claims from the scope of Rule 1.04. Brewer & Pritchard could not have shared a fee with another firm or any lawyer who was not a member of Brewer & Pritchard without the crash victims' knowledge and consent.

Therefore, absent that knowledge and consent, there could be no referral fee and thus no damages because there would be no loss.

However, Rule 1.04 does not prohibit lawyers within the same firm from sharing in fees, even if the client is unaware of the sharing arrangement. Rule 1.04 provides only that a fee-sharing agreement between lawyers *who are not in the same firm* should not be made unless "the client is advised of, and does not object to, the participation of all the lawyers involved." [32]

There is evidence from which a factfinder could conclude that Chang acted as Brewer & Pritchard's agent in his dealings with the Kings in the aftermath of the crash and attempting to represent them and the other crash victims. The alleged referral by Chang to Johnson occurred while Chang was a member of the Brewer & Pritchard firm. Accordingly, any compensation Chang may have received or might receive in the future that is related to the crash victims' claims would be referable to the time that he was an associate at Brewer & Pritchard. To the extent that Brewer & Pritchard seeks recovery or disgorgement of payments or other compensation to Chang, it is not seeking, for

---

30. Rule 1.04(f) & (g) provide:

> (f) A division or agreement for division of a fee between lawyers who are not in the same firm shall not be made unless:
> (1) the division is:
> (i) in proportion to the professional services performed by each lawyer;
> (ii) made with a forwarding lawyer; or
> (iii) made, by written agreement with the client, with a lawyer who assumes joint responsibility for the representation;
> (2) the client is advised of, and does not object to, the participation of all the lawyers involved; and
> (3) the aggregate fee does not violate paragraph (a).

> (g) Paragraph (f) of this Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.

TEX. DISCIPLINARY. R. PROF'L CONDUCT 1.04(f), (g).

31. *See Lemond v. Jamail*, 763 S.W.2d 910, 913–14 (Tex.App.-Houston [1st Dist.] 1988, writ denied); *Fleming v. Campbell*, 537 S.W.2d 118, 119 (Tex.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.).

32. "A division or agreement for division of a fee between lawyers who are not in the same firm shall not be made unless...." TEX. DISCIPLINARY. R. PROF'L CONDUCT 1.04(f), (g).

purposes of Rule 1.04, to share a fee with a lawyer who is not in the same firm.

There is no evidence that the King family would *object* to Chang, as distinguished from Brewer & Pritchard, sharing in fees paid in their suit over the helicopter crash. Henry King only denied that any agreement to compensate Chang exists. He did not say that if Chang had been or will be compensated, the King family would object.

Johnson and Chang also failed to offer summary judgment evidence that Rule 1.04 would bar Brewer & Pritchard from sharing in fees paid by the crash victims other than the King family. Johnson and Chang did not offer any summary judgment evidence that the crash victims other than the Kings objected to Chang and Brewer & Pritchard sharing in legal fees. Accordingly, Johnson and Chang were not entitled to summary judgment based on Rule 1.04.

We now turn to the issues raised in Brewer & Pritchard's petition for review in which it argues that the court of appeals erred in affirming summary judgment for Johnson and Chang on the conspiracy, conversion, actual fraud, and negligence claims.

## VI

Brewer & Pritchard alleged that Nick Johnson conspired with Chang to accomplish an unlawful purpose. The Brewer & Pritchard firm asserted that Johnson was a conduit through which Chang shared in a referral fee from Jamail & Kolius. Johnson and Chang moved for summary judgment on this claim on the basis, among others, that there was no evidence that any unlawful purpose had been accom-

plished and that they were therefore entitled to summary judgment under Rule 166a(i).

The trial court granted the motion for summary judgment. The court of appeals affirmed without reaching the merits of the conspiracy claim. The court of appeals reasoned that Brewer & Pritchard's response to the no evidence motion for summary judgment did not tie facts in the record to the specific elements of the conspiracy claim.[33] Brewer & Pritchard challenges the disposition of the conspiracy claim in its petition for review. We first consider whether Brewer & Pritchard's response to the no evidence motion for summary judgment met the requirement of Rule 166a(i) that evidence must be produced "raising a genuine issue of material fact." [34]

### A

The court of appeals held that Brewer & Pritchard's response to the motion for summary judgment failed to point out evidence "as it related to the challenged elements of the causes of action," including the conspiracy claim.[35] The court observed that the response "globally stated facts to support its conclusions as it sees them and cited to the record in support of those facts, [but] made no effort to connect any of the facts to the challenged elements of the causes of action." [36] The court concluded that it was "not required to search the record without guidance from [Brewer & Pritchard] to determine whether it has produced evidence raising a genuine issue of material fact on the elements challenged by [Johnson and

---

**33.** 7 S.W.3d at 868–69.

**34.** Tex.R. Civ. P. 166a(i).

**35.** 7 S.W.3d at 868.

**36.** *Id.* at 869.

Chang]." [37]

While Brewer & Pritchard's response might have been more specific in addressing the elements of its conspiracy claim, the response was not wholly inadequate under Rule 166a(i). That rule provides:

(i) No–Evidence Motion. After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.[38]

This Court's comment to Rule 166a explains that a respondent to a motion under paragraph (i) need not marshal evidence, but may point out evidence that raises a fact issue on the challenged elements:

This comment is intended to inform the construction and application of the rule.... To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. The existing rules continue to govern the general requirements of summary judgment practice. A motion under paragraph (i) is subject to sanctions provided by existing law (Tex Civ. Prac. & Rem.Code §§ 9.001–10.006) and rules (Tex.R.Civ.P. 13).[39]

Brewer & Pritchard's response to the motion for summary judgment was divided into several sections by a number of headings and sub-headings. None of these headings identified the conspiracy claim by a specific reference to that claim. A large part of the response was devoted to a recitation of facts in the record, and one of the sub-headings in the "Facts" section is *"Settlement and Referral Fee—Immediate 'Loss of the Money.'"* Within this subsection, Brewer & Pritchard detailed evidence that it says indicates that Chang benefitted from Johnson's fee agreement with Henry King. After identifying this evidence, Brewer & Pritchard asserted in a single sentence, "[t]hese facts clearly evidence a sloppy but, thus far effective scheme to funnel half of the referral funds through Johnson and Lasco and then, back to Chang."

Another section of the response is entitled "There are Genuine Issues of Material Fact that Preclude the Granting of Summary Judgment." Within a subsection of this part of the response, Brewer & Pritchard states that "B & P's claims of conspiracy, conversion, actual and constructive fraud, and negligence, are all based on Chang's breach of his fiduciary duty to B & P." Brewer & Pritchard then sets forth argument and authorities in support of its position that Chang owed a fiduciary duty. Within that discussion is Brewer & Pritchard's contention that third parties are also liable if they "knowingly aided and assisted in the breach of the fiduciary duty." In succeeding paragraphs, Brewer & Pritchard points to facts that it contends establish a fiduciary duty and breach of that duty.

Whether Brewer & Pritchard adequately pointed out evidence relating to challenged elements of the conspiracy cause of action is a close question. But we conclude that the summary judgment re-

---

**37.** *Id.* at 868 (citations omitted).

**38.** Tex.R. Civ. P. 166a(i).

**39.** *Id.*

sponse met the minimum requirements of Rule 166a(i).[40] Accordingly, the court of appeals could not affirm the trial court's judgment on the conspiracy claim because of a lack of specificity of the summary judgment response.

The court of appeals erred in failing to consider the merits of Brewer & Pritchard's contention that it raised fact issues on the conspiracy claim. Rendition of judgment for Johnson and Chang on the conspiracy claim was nevertheless correct because, as we consider below, Brewer & Pritchard did not raise a material fact question on an essential element of that claim, which is that an unlawful purpose was accomplished.

### B

The unlawful purpose that Brewer & Pritchard contend was accomplished by a conspiracy between Johnson and Chang was Chang's breach of a fiduciary duty. In determining if there was legally sufficient evidence to raise a fact question in response to Johnson and Chang's no evidence motion for summary judgment on this issue, we consider the evidence in the light most favorable to Brewer & Pritchard, the nonmovant.[41] There is, however, no summary judgment evidence of breach. There is no evidence that Chang profited or gained an advantage in any way from assisting Henry King in retaining Nick Johnson or Jamail & Kolius.

The helicopter crash occurred on April 1, 1995. Henry King signed a contingent fee agreement with Nick Johnson on April 6. It was during this five-day period that Chang had discussions with Gaas and Pritchard, partners at Brewer & Pritchard, about reaching a fee agreement with the King family on behalf of that firm.

During this same time, Chang scheduled consultations for Henry King with Nick Johnson, Jamail & Kolius, and several other personal injury lawyers and firms who had been suggested by Gaas. Chang accompanied King to each of the meetings. The day after Henry King signed a fee agreement with Nick Johnson, Jamail & Kolius wrote a letter to Johnson agreeing to accept a referral of the case with one-half the net fee to be paid to Johnson. Johnson and Chang had been friends since law school, and phone records confirm that Johnson called Chang at Brewer & Pritchard several times during the week that these agreements were reached. Nevertheless, Johnson denied knowing that Chang worked for Brewer & Pritchard when the discussions with Henry King and Jamail & Kolius were underway. Although a jury would be free to disbelieve Johnson, this evidence does not establish that Chang personally profited from his role in finding counsel for Henry King.

Within roughly the same time frame, Johnson was also retained to represent individuals unrelated to the Kings who were injured or had family members injured in the helicopter crash. Johnson consummated a referral agreement with Jamail & Kolius regarding those claims on April 19. Brewer & Pritchard do not assert and there is no evidence that Chang played any part in bringing about Johnson's agreement with these individuals or the referral agreement with the Jamail firm.

Chang left the Brewer & Pritchard firm about two months later, on June 15. He went to the firm of Adams & Reese along with and at the request of a partner at Brewer & Pritchard with whom Chang had

---

**40.** See Tex.R. Civ. P. 166a(i).

**41.** *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000) (setting forth standard of review under Rule 166a(i)).

also worked when they had both previously been at Winstead, Sechrest & Minick. While Chang was at Adams & Reese, during the fall of 1996, the Kings' personal injury claims in the suit over the crash were settled, along with the claims of Chinese nationals that Johnson and the Jamail firm also represented in connection with the crash. Chang was present at a hearing regarding the settlements. Brewer & Pritchard point to this as some evidence that Chang had a financial interest in the King case. However, the uncontradicted testimony in the record before us is that at the trial court's request and with the approval of his then-employer Adams & Reese, Chang accompanied Johnson to the People's Republic of China as an interpreter to translate into Chinese the terms of the settlement agreement and read it to several claimants. The trial court directed Chang to file an affidavit to confirm that he had personally met with the claimants and had explained the settlement in their language. Chang did not appear as counsel, and Johnson paid the expenses Chang incurred in making the trip to China. Chang and Johnson both testified that Chang received no other compensation.

Johnson was paid a referral fee of approximately $3,000,000 in October 1996. Chang left Adams & Reese a little more than a year later, at the end of 1997. He and Johnson then formed a partnership. There is testimony in the record from Johnson, Chang, and Henry King that Chang has never received any fee or compensation in connection with the helicopter crash, other than payment of expenses for the trip to China. Henry King and Johnson both testified that they have never agreed to or promised to pay Chang any type of fee or other compensation in connection with the crash and do not intend to do so. Chang has testified that he has no expectation of ever receiving any fee or payment in connection with the crash.

Brewer & Pritchard does not contend and indeed concedes that Jamail & Kolius had no agreement with Chang, directly or otherwise, to share any fee with him or to pay him any other compensation.

Brewer & Pritchard have not adduced any direct evidence that Chang has profited from the Kings' suit. The firm contends, however, that a jury could infer from evidence of payments that Johnson made to a company called Lasco Oil & Gas that Chang received remuneration. We disagree. Brewer & Pritchard rely on the fact that Johnson wrote two checks to Lasco totaling $1,490,000 in early December 1996, and that about two weeks later, Johnson wrote another check to Lasco in the amount of $650,000. Brewer & Pritchard says that these transactions are highly suspicious, particularly since Johnson's 1996 tax return reflects a $1,651,115 loss for an investment in oil and gas exploration and production. Brewer & Pritchard also contends, without explaining why it is "suspicious," that there is evidence that Nick Johnson's brother is connected to Lasco.

Brewer & Pritchard further points out that Lasco is a client of Johnson and Chang's law firm. But Brewer & Pritchard fail to demonstrate how any of this is evidence that Chang received part of Johnson's referral fee in the King suit. There is no evidence of the amount of fees that Lasco has paid to Johnson and Chang, much less evidence that those fees were excessive or part of a sham transaction.

Brewer & Pritchard note that Chang asserted the attorney-client privilege when questioned about Lasco in his deposition. But the firm did not move to compel or seek any other relief in the trial court on this score. The firm does not and cannot now complain on appeal that it was enti-

tled to further discovery about Lasco's dealings with Johnson or Chang.

Finally, Brewer & Pritchard rely on the affidavit of a woman who met Chang when she worked as a summer associate at the Brewer & Pritchard firm in 1995, which was a few months after the helicopter crash. The affidavit recites that the summer associate had a personal friendship with Chang before he left the employment of Brewer & Pritchard, and that she had "a couple of dinner dates" with him after he left that firm to join Adams & Reese. The affidavit says that, "[d]uring personal conversations with Chang, he bragged to me that he had something working outside of his employment which was going to make him so rich that he would probably be able to retire within a year." This does not constitute evidence that Chang received remuneration in connection with the Kings' claims. A jury could only speculate that the "something working outside [Chang's] employment" was related to the Kings' personal injury claims. As we have said on more than one occasion, "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." [42] Similarly, the affidavit does not indicate when the statement attributed to Chang was made and thus whose employment Chang was "outside of," Brewer & Pritchard's or Adams & Reese's.

Discovery had been conducted when the trial court heard the motion for summary judgment. Brewer & Pritchard had asked for and received Johnson's bank records and tax returns, some of which are part of the summary judgment evidence. Brewer & Pritchard has failed to come forward with evidence that Chang has received or that there is an agreement that he will receive a fee or other compensation directly or indirectly from the Kings' suit or the claims of the Chinese citizens. Nor is there any evidence that fees from Johnson and Chang's partnership have been disproportionately distributed to Chang or that the partnership was otherwise used to funnel funds to Chang. Brewer & Pritchard does not contend in this Court that it needed additional time for discovery, nor does it contend in this Court that Johnson or Chang failed to comply with any discovery request. While the circumstances of this case certainly give rise to suspicions regarding Chang's conduct, suspicion does not raise a question of fact. [43] Brewer & Pritchard failed to meet its burden of proof. Accordingly, the trial court did not err in granting summary judgment for Johnson and King on the conspiracy claim.

## VII

Johnson and Chang moved for summary judgment on Brewer & Pritchard's remaining claims, which were conversion, actual fraud, and negligence. With regard to the conversion claim, Johnson and Chang asserted that the summary judgment proof established that Chang did not receive any portion of the referral fee. [44] Alternatively, they asserted that there was no evidence that Chang received

---

42. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 927 & n. 3 (Tex.1993) (citing *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.")).

43. *Id.* at 927.

44. We have defined conversion as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 391 (Tex.1997) (citation omitted).

any part of the fee in the helicopter crash case. As discussed above, Brewer & Pritchard failed to raise a fact question on this issue. The trial court did not err in granting summary judgment for Johnson and Chang on the conversion claim.

█ With regard to the fraud claim, Johnson and Chang asserted that there was no evidence of any of the elements of that cause of action, including reliance on a misrepresentation by Chang.[45] Although Brewer & Pritchard responded that Chang "lied to B & P when he said that he had no idea how Mr. Jamail got the case," and pointed to other alleged misrepresentations, the summary judgment response was silent as to how Brewer & Pritchard relied to its detriment on these misrepresentations. Summary judgment on the fraud claim was appropriate.

█ Johnson and Chang moved for summary judgment on the negligence claim on the ground, among others, that there was no evidence of damages proximately caused by any negligence. Brewer & Pritchard's response failed to show how the firm was damaged, even assuming that Chang's actions amounted to negligence. The firm did not point to any summary judgment evidence that but for Chang's negligence, Henry King or the Chinese citizens would have retained Chang or Brewer & Pritchard in connection with the helicopter crash. We accordingly affirm *the judgment of the court of appeals on the negligence claim.*

\* \* \* \* \* \*

Although our reasoning differs from that of the court of appeals, we affirm the court of appeals' judgment reversing and remanding the breach of fiduciary duty and constructive fraud claims to the trial court and affirming the trial court's judgment in favor of Johnson and Chang on all of Brewer & Pritchard's remaining claims. Further proceedings in the trial court shall be consistent with this opinion.

Justice O'NEILL did not participate in the decision.

---

45. The elements of a cause of action for fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re First-Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).