In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00076-CV


______________________________




IN RE: THE ESTATE OF


BEVERLY HINES HARRIS, DECEASED



AND



DALLAS HARRIS, EXECUTOR OF THE ESTATE OF


BEVERLY HINES HARRIS, DECEASED


V.


LIBBY HINES, INDIVIDUALLY AND AS EXECUTRIX


OF THE ESTATE OF RODNEY HINES, DECEASED





 


On Appeal from the County Court at Law


Harrison County, Texas


Trial Court Nos. 2001-14,337-CCL and 01-5510-CCL




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Dallas Harris, appellant, has filed a motion seeking to dismiss his appeal. Pursuant
to Tex. R. App. P. 42.1, his motion is granted.

 The appeal is dismissed.

 

 Donald R. Ross

 Justice


Date Submitted: August 26, 2002

Date Decided: August 27, 2002


Do Not Publish


Justice Carter



O P I N I O N



 After a trial on the merits of his lawsuit, a nonunanimous jury returned a verdict in favor of
Dr. Bob J. Herrin against The Medical Protective Company, Herrin's former malpractice insurer. 
That verdict specifically found Medical Protective had violated the Texas Deceptive Trade Practices
Act (DTPA) and awarded $100,000.00 in damages for Medical Protective's "knowing" violation of
the DTPA. The jury further found Medical Protective had defrauded Herrin and awarded him
$250,000.00 on that claim. Additionally, the jury awarded attorney's fees. 

 Medical Protective now appeals the jury's verdict, raising a plethora of appellate issues. We
find merit in two of the issues raised by Medical Protective and, for the reasons stated below, we
sustain those points of error and reverse the trial court's judgment, rendering a take-nothing judgment
in favor of Medical Protective.

I. Prior History

 This is not the first time this case has come before us on appeal. Six years ago, Herrin had
appealed the trial court's award of summary judgment in favor of Medical Protective. Herrin v. Med.
Protective Co., 89 S.W.3d 301 (Tex. App.--Texarkana 2002, pet. denied). We affirmed the trial
court's judgment in part, reversed it in part, and remanded the case for further proceedings. Id.

II. The Evidence Adduced at Trial in This Case

 The evidence at trial showed Herrin is a retired general surgeon who has lived and worked
in Marshall, Texas, for most of his nearly fifty-year career. During most of that time (until 1998),
Medical Protective provided medical malpractice insurance to Herrin. In 1994, Herrin performed
laparoscopic gall bladder surgery on a twenty-five-year-old female. Unbeknownst to Herrin at the
time, there were problems with the surgery. Herrin transected the patient's common bile duct during
the operation, resulting in bile spilling into her abdomen for several days before the error was
corrected by two other surgeries (performed by a different surgeon). The patient suffered severe
complications as a result. 

 The patient sued Herrin, and that case settled in 1996 (following mediation) for $300,000.00. 
(This amount was less than Herrin's Medical Protective policy limit of $500,000.00.) Herrin testified
at trial in the current case that, at the time of that settlement, he was promised by Chuck Curtice
(Medical Protective's agent) that the doctor's agreement to the settlement would not result in the
cancellation or nonrenewal of his malpractice insurance with Medical Protective. Herrin, however,
later stated he was promised only that his malpractice insurance would not be cancelled and testified
that he was not promised that his malpractice insurance would not be nonrenewed. 

 In 1997, Medical Protective renewed Herrin's malpractice insurance. Id. at 304. But in 1998,
the company did not renew Herrin's policy because of the high "frequency" and "severity" of claims
against his policy. Id. After more than forty years of doing business with Medical Protective, Herrin
had to find a replacement insurance carrier, which he was able to do before the expiration of his
then-current policy. Herrin, therefore, suffered no lapse in coverage.

 Herrin's new carrier, Frontier Insurance, kept Herrin's business for three years, but Frontier
then withdrew entirely from the Texas market, leaving Herrin to find yet another company to provide
him with medical malpractice coverage. By this time, Herrin was over seventy years old and found
himself unable to obtain the same type of insurance policy he had been purchasing for the entirety
of his career. Id. (Herrin wanted "occurrence" coverage, but he could only find "claim" coverage.) 
Herrin then "retired prematurely from practicing medicine because he could not receive the necessary
coverage to continue his surgery practice." Id.

 Subsequent to his retirement, Herrin sued Medical Protective for the damages (reduced
earning capacity and mental anguish) he associated with what he considered to be a "forced" early
retirement caused by Medical Protective's decision to nonrenew his insurance coverage three years
earlier. That lawsuit went to trial and resulted in a jury verdict adverse to Medical Protective, which
the insurance company now appeals.

III. Analysis of the Issues Presented

 In one of its issues, Medical Protective contends the evidence is legally insufficient to support
the jury's finding that Medical Protective violated the DTPA. Assuming (without so deciding) that
the jury correctly found Medical Protective violated the DTPA, the jury's verdict in this case creates
an additional problem: The jury found Herrin suffered no actual damages as a result of Medical
Protective's alleged DTPA violation. Instead, the jury found Herrin's only compensable injuries for
the alleged DTPA violation came from Herrin's resulting mental anguish. Therefore, Medical
Protective now contends this finding regarding mental anguish damages is unsupported by legally
sufficient evidence.

 In reviewing a challenge to the legal sufficiency of the evidence, this Court must consider
all of the evidence in a light most favorable to the party in whose favor the verdict was rendered. 
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). The final test for legal
sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

 The process of awarding damages for amorphous injuries such as mental anguish is
inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. 
Dollison v. Hayes, 79 S.W.3d 246, 249 (Tex. App.--Texarkana 2002, no pet.). Juries are generally
afforded wide discretion in awarding a damages amount for mental anguish because our law provides
no absolute, objective guidelines to assess the monetary equivalent to such injuries. See Texarkana
Mem'l Hosp., Inc. v. Murdock, 946 S.W.2d 836, 841 (Tex. 1997). Nevertheless, the Texas Supreme
Court has explicitly stated a plaintiff may not recover damages for mental anguish unless the plaintiff
provides (1) direct evidence of the nature, duration, or severity of the anguish establishing a
substantial disruption of the daily routine, or (2) other evidence of a high degree of mental pain and
distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. Saenz v. Fid. &
Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) (referencing Parkway Co. v. Woodruff,
901 S.W.2d 434, 444 (Tex. 1995)). In Saenz, this State's highest civil court noted that the Parkway
plaintiffs' concerns about flooding were both real and understandable; but the court also recognized
that those same Parkway plaintiffs had "failed to prove that their distress involved more than these
emotions." Id.

 In the case now on appeal, Herrin testified he felt "[t]errible" when he received the
nonrenewal notice from Medical Protective. He testified he was "[t]remendously" upset that Medical
Protective wrote him a letter saying his claims were both frequent and severe, although Herrin did
not further elaborate on what he meant by this "tremendous" feeling of upset. He also testified that,
following the nonrenewal, Herrin felt like he could no longer get his work done as easily as he once
could, that the work itself was no longer as pleasant as it once had been, and that his work became
more difficult instead of being something enjoyable. He also theorized he had become somewhat
suicidal based on having once decided to drive his new motorcycle at an extremely excessive rate
of speed. (1)

 Herrin provided no testimony or evidence that his claimed mental anguish had any detriment
to his physical health. Nor did Herrin present evidence that he sought professional psychiatric
assistance or received medication to help him cope with his alleged mental anguish. There was no
testimony from Herrin or other witnesses regarding the severity of any anguish that demonstrated
a substantial disruption to Herrin's daily routine, as would be required to support a compensable
mental anguish claim. In short, the evidence before the jury regarding Herrin's mental anguish
damages showed nothing more than mere worry, anxiety, vexation, embarrassment, or anger. 
Therefore, we cannot say the jury's finding that Herrin suffered compensable mental anguish is
supported by legally sufficient evidence. We sustain this point of error.

 In another point of error, Medical Protective contends the evidence is legally insufficient to
support the jury's finding that it committed fraud. The jury awarded Herrin $250,000.00 in damages
for his fraud claim. Herrin's claim of fraud was premised on his belief that Curtice (an employee of
Medical Protective with whom Herrin had worked for many years) had promised Herrin that the
doctor's consent to settling the 1996 malpractice claim for $300,000.00 would not cause Medical
Protective to cancel or nonrenew his malpractice insurance.

 The elements of fraud are (1) a material misrepresentation was made by the opposing party;
(2) that representation was false; (3) when that representation was made, the speaker knew it was
false or made the statement recklessly without any knowledge of the truth and as a positive assertion;
(4) the speaker made the representation with the intent that the other party act on it; (5) the party
acted in reliance on that representation; and (6) the party thereby suffered injury. Johnson v. Brewer
& Pritchard, P.C., 73 S.W.3d 193, 211 n.45 (Tex. 2002).

 Assuming (without deciding) that Herrin met his burden of proof on the first five elements
of his fraud claim, a review of the entire record before us reveals no evidence (and certainly not
legally sufficient evidence) that Herrin suffered any injury as a result of relying on Curtice's alleged
promise that the doctor's assent to settlement of the 1996 malpractice lawsuit would cause the
cancellation or nonrenewal of his insurance. We reach this conclusion for several reasons.

 First, Medical Protective did renew Herrin's malpractice insurance for the policy year
following the 1996 settlement. Second, for the years following Medical Protective's decision not to
renew Herrin's insurance, Herrin's net income either rose (sometimes by as much as twenty-five
percent) or remained about the same as his final years with Medical Protective. 

 Third, Herrin asserted his overall surgical referrals had gone down since 1997, but he also
explained that this decline was attributable to his own professed desire to slow down his practice and
the recent arrival of two new orthopedic surgeons to the Marshall community. In fact, Herrin
admitted at trial he had no proof he had lost any referrals as a result of Medical Protective's
nonrenewal decision. Fourth, following Medical Protective's decision to not renew his insurance,
neither Frontier Insurance (Herrin's 1998 replacement insurer) nor the Marshall hospital restricted
Herrin's surgical privileges in any way. 

 Finally, a variety of reasons leads us to conclude that the testimony of Herrin's expert
regarding Herrin's damages for fraud failed to establish a causal connection between Herrin's alleged
damages and Medical Protective's alleged fraud. Initially, we note that the expert's opinion was
based on several presumptions that were false. The expert first assumed Herrin's hospital privileges
had been restricted during the years following Medical Protective's nonrenewal. Yet even Herrin
himself conceded that his privileges had not been curtailed during the relevant time period. The
expert's economic loss projections were also based on the premise that Medical Protective had told
people in the Marshall community that Herrin was, in essence, a bad doctor. This assumption was
necessary for Herrin's expert to link the expert's economic loss projections to Medical Protective's
conduct. But the jury heard no evidence from any source that Medical Protective told anyone--other
than Herrin himself--of the company's decision not to renew. Instead, all the evidence at trial
showed that Herrin was the person who told others about his insurance being nonrenewed. Thus,
the expert's economic loss projections could not be linked to any conduct by Medical Protective. In
fact, the expert conceded that, if the evidence at trial showed it was Herrin himself who was
responsible for telling others in the Marshall community about the nonrenewal, then all of the
expert's damages calculations could not be attributed to Medical Protective. (2) Thus, as a matter of
law, the expert's damages calculations could not support a finding of loss in this case because the
purported conduct on which those calculations were based was not engaged in by Medical Protective
or was conduct (such as a limitation of Herrin's surgical privileges) that never occurred.

 Accordingly, we cannot say there is legally sufficient evidence of any fraud damages
(assuming, without deciding, that there was legally sufficient evidence to support the first five
elements of the fraud cause of action). Neither direct nor indirect evidence links Herrin's claimed
damages to any conduct by Medical Protective. Herrin's insurance was renewed in 1997, the policy
year following the $300,000.00 malpractice settlement. The evidence in this case does not support
Herrin's claim of fraud.

IV. Conclusion

 The jury found only that Medical Protective had violated the DTPA and committed fraud. 
The jury's sole basis for awarding damages under the DTPA claim was for Herrin's claim of mental
anguish. We have concluded the mental anguish damages awarded by the jury were not supported
by legally sufficient evidence. Similarly, the jury's $250,000.00 award for Herrin's fraud cause of
action was not supported by legally sufficient evidence inasmuch as there was no evidence that
tended to connect Medical Protective's alleged fraudulent conduct to Herrin's alleged pecuniary
losses. 

 Therefore, for the reasons stated, we reverse the trial court's judgment based on the jury's
verdict, and we render a judgment in favor of Medical Protective that Herrin take nothing.




 

 Jack Carter

 Justice


Date Submitted: July 18, 2007

Date Decided: October 3, 2007

1. Herrin later admitted he was never truly suicidal; he had only been engaging in
uncharacteristically risky behavior. 
2. The expert told the jury, "Yeah, if you shoot yourself in the foot, I guess you're responsible
for your own shooting."